[No. C029415. Third Dist. Apr. 9, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
MARK RUSSELL SHEAR, Defendant and Appellant.

## COUNSEL

Alfons G. Wagner, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, and W. Scott Thorpe, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**SIMS, Acting P. J.**—A jury convicted defendant Mark Russell Shear of being a convicted felon in possession of a firearm (Pen. Code, § 12021, subd. (a)(1), hereafter section 12021(a)(1); all further undesignated section references are to the Penal Code) based in part on proof that he had been convicted of the felony of "aggravated assault" in Arizona in May 1989. The trial court granted probation, including 120 days in county jail or a custody alternative program.

Defendant contends that reversal is required because: (1) It was not shown beyond a reasonable doubt that the acts giving rise to his Arizona conviction would have been a crime, much less a felony, if committed in California; and (2) pursuant to the provisions of an Arizona statute, his right to possess a

firearm in Arizona had been fully restored as of the date of the current offense, a "determination" by a sister state which California must honor under the full faith and credit clause of the United States Constitution (art. IV, § 1).[1]

We disagree with these contentions and shall affirm the judgment.

## FACTS

### The Arizona conviction.

In May 1989, defendant pleaded guilty in Maricopa County (Arizona) Superior Court to aggravated assault (Ariz. Rev. Stat. § 13-1204, subds. A.2., B (1989)), described as a "class 3 felony." Under this statute, as relevant, a person commits aggravated assault if he or she commits assault ". . . us[ing] a deadly weapon or dangerous instrument." (Ariz. Rev. Stat. § 13-1204, subd. A.2 (1989).) Assault is defined in Arizona law as "1. Intentionally, knowingly or recklessly causing any physical injury to another person; or [¶] 2. Intentionally placing another person in reasonable apprehension of imminent physical injury; or [¶] 3. Knowingly touching another person with the intent to injure, insult or provoke such person." (Ariz. Rev. Stat. § 13-1203, subd. A (1989).)[2]

### Prosecution case.

On July 26, 1997, members of the Butte County Interagency Narcotics Task Force searched defendant's residence pursuant to a warrant. They found a loaded .25-caliber semiautomatic handgun on top of a high kitchen cabinet, about six inches below the ceiling. The weapon was concealed and not visible from below. The officer who seized it did not recall seeing any dust on it.

Defendant voluntarily talked to the officers. (The jury heard a tape of the relevant portion of his statement.) He first denied and then admitted that the gun was his. He said he had forgotten it was there; according to him, it had been there as of a prior search in October 1996. He admitted he had been convicted of a felony in Arizona and knew he was not supposed to have the gun. He did not say that the gun belonged to or was left there by anyone else.

During the 1996 search of defendant's residence officers found a rifle. They warned him then that he could not legally possess any firearm. He answered that "his rights were restored in Arizona."

---

[1]Defendant raised both contentions before trial by means of a motion to withdraw his plea, to demur, and to dismiss the complaint. After the trial court denied the motion, defendant filed a petition in this court for writ of mandate or prohibition, raising the same contentions. We summarily denied the petition.

[2]We take judicial notice of all relevant provisions of Arizona law. (Evid. Code, §§ 452, subd. (a), 459.)

*Defense case.*

Testifying on his own behalf, defendant stated that his father, who owned the residence defendant had lived in since 1995, also owned the handgun. Defendant did not put it where it was found and did not know it was there.

According to defendant, the officers executed the search warrant at 6:00 a.m., waking him. He was still confused and sleepy when he talked to them. He said the gun was his because he knew it was his father's gun and he had seen it before; he just didn't know it was up on top of the cabinet. He tried to say that it was actually his father's, but never got the chance.

Defendant testified that the police warned him during the 1996 search that he could not legally possess firearms, but that the officer who said that "was not positive. She didn't positively say that I couldn't." The rifle they found in that search was a family heirloom given as a present to his seven-year-old son.

Defendant admitted that he had pleaded guilty to a felony in Arizona, but asserted that his plea agreement included a provision that successful probation would restore all his rights.

## DISCUSSION

### I

Section 12021(a)(1) provides in part: "Any person who has been convicted of a felony under the laws of the United States, of the State of California, or any other state, government, or country, . . . who owns or has in his or her possession or under his or her custody or control any firearm is guilty of a felony."

■ Defendant contends that the Arizona felony of which he was convicted would not be a felony in California, because aggravated assault may be committed in Arizona merely by intentionally placing another person in "reasonable apprehension of imminent physical injury" with the use of "a deadly weapon or dangerous instrument" (Ariz. Rev. Stat. §§ 13-1203, subd. A., 13-1204, subd. A.2. (1989)), and this does not necessarily entail either the use of physical force or the intent to commit a battery, as does felony assault in California. As will appear, under section 12021(a)(1) it does not matter whether defendant is right. The statute is satisfied if a defendant has been convicted of a felony under the law of any state, regardless of whether the offense would have been punishable as a felony in California.

Defendant's contention that section 12021(a)(1) requires proof that an out-of-state felony would also have been a felony in California was rejected in *People* v. *Domenico* (1953) 121 Cal.App.2d 124 [263 P.2d 122]. The defendant there, convicted of grand theft in New York State, argued that it had not been proven his crime was a felony under California law because the New York felony could be committed by stealing property worth $100 or more, whereas felony grand theft in California required the taking of property worth at least $200. (*Id.* at p. 126.) The court held that the language of section 12021(a)(1), "convicted of a felony under the laws of . . . any other state" literally meant "felony" as defined by the laws of that state, and found that the history of amendments to the statute and case law construing the statute supported that literal reading. (121 Cal.App.2d at pp. 127-128.)

In *People* v. *Lang* (1989) 49 Cal.3d 991 [264 Cal.Rptr. 386, 782 P.2d 627], our Supreme Court, construing a number of penal statutes dealing with prior out-of-state felony convictions, held: "In the absence of limitation, a reference to 'prior felony convictions' is deemed to include any prior conviction which was a felony under the laws of the convicting jurisdiction." (*Id.* at pp. 1038-1039.) Among the decisions the court cited with approval to exemplify this rule is *Domenico.* (*Id.* at p. 1039.)

In light of *Domenico* and *Lang,* we conclude that defendant may not attack his conviction for violation of section 12021(a)(1) by showing that his Arizona offense would not have been a felony in California. The undisputed fact that the conviction was a felony in Arizona is sufficient to satisfy the statute.

## II

▪ Defendant contends: (1) under the full faith and credit clause of the United States Constitution, California must give full faith and credit to Arizona's alleged restoration of his right to possess firearms in that state, and (2) doing so precludes his prosecution by California for possessing a firearm in this state. We conclude that even assuming an Arizona statute has restored defendant's right to possess a firearm in that state, the full faith and credit clause does not bar California from prosecuting defendant under section 12021(a)(1).

The record does not make clear whether defendant's right to possess a firearm in Arizona has actually been restored; however, for purposes of this appeal we shall presume it was. Prior to 1988, Arizona law provided: "Upon completion of the term of probation, or upon absolute discharge from imprisonment, and upon the completion of payment of any fine or restitution

imposed, any person who has not previously been convicted of any other felony shall automatically be restored any civil rights which were lost or suspended by the conviction." (Ariz. Rev. Stat. former § 13-812 [now § 13-912, subd. A.] (1989).)[3] Defendant committed the Arizona offense on August 29, 1988. On June 22, 1988, an amendment to the Arizona statute was filed in the office of the Arizona Secretary of State which required a felon to apply to the court in order to obtain restoration of his right to possess weapons. (Ariz. Rev. Stat. § 13-912, subd. B. (1989).) The record does not show that defendant made such application. However, the People conceded in the trial court that this provision did not take effect until September 1, 1988, after the date of defendant's offense. On appeal, they do not contest defendant's assertion that the former provision restored his right to possess a firearm in Arizona by operation of law as of September 6, 1994, when he was discharged from probation. Therefore we shall assume that defendant's right was restored in Arizona. However, it does not follow that this statutory restoration amounted to a "public act[], record[], [or] judicial proceeding[]" of Arizona to which California must give full faith and credit (U.S. Const., art. IV, § 1) so that California is therefore barred from prosecuting him under section 12021(a)(1).

■ As noted, the full faith and credit clause requires a state to give effect to the "public acts, records, and judicial proceedings" of sister states. (U.S. Const., art. IV, § 1.) Although state statutes arguably fall within the literal terms of the clause, the United States Supreme Court, beginning with a trilogy of workers' compensation cases decided in the 1930's (*Pacific Ins. Co.* v. *Comm'n.* (1939) 306 U.S. 493 [59 S.Ct. 629, 83 L.Ed. 940] (*Pacific Ins. Co.*); *Alaska Packers Asso.* v. *Industrial Acci. Com.* (1935) 294 U.S. 532 [55 S.Ct. 518, 79 L.Ed. 1044] (*Alaska Packers Asso.*); *Bradford Electric Light Co.* v. *Clapper* (1932) 286 U.S. 145 [52 S.Ct. 571, 76 L.Ed. 1026, 82 A.L.R. 696] (*Clapper*)), has significantly limited the clause's application to statutes.

In *Clapper*, the court stated: "[*T*]*he full faith and credit clause does not require the enforcement of every right conferred by a statute of another state.* There is room for some play of conflicting policies. Thus, a plaintiff suing in New Hampshire on a statutory cause of action arising in Vermont might be denied relief because the forum fails to provide a court with jurisdiction of the controversy [citations]; or because it fails to provide procedure appropriate to its determination [citations]; *or because the enforcement of the right conferred would be obnoxious to the public policy of the forum* [citations]; or because the liability imposed is deemed a penal one [citations]." (286 U.S. at p. 160 [52 S.Ct. at p. 576, 76 L.Ed. at p. 1035], italics added.)

---

[3]In entering his plea, defendant avowed that he had no prior felony convictions.

In *Alaska Packers Asso.*, the court carried this analysis further. The issue was whether the workers' compensation law of Alaska (then a territory) or that of California governed a claim by an employee of a California business who had sustained a work-related injury while on assignment in Alaska. The California Supreme Court upheld an award to the employee by the California Industrial Accident Commission under California law. The United States Supreme Court affirmed that judgment. (294 U.S. at pp. 538-539, 550 [55 S.Ct. at pp. 519-520, 525, 79 L.Ed. at pp. 1047, 1053].)

As to full faith and credit, the court first found that the workers' compensation laws of the two jurisdictions conflicted materially and that both claimed to be compulsory and exclusive on the facts presented. (*Alaska Packers Asso., supra*, 294 U.S. at p. 544 [55 S.Ct. at p. 522, 79 L.Ed. at p. 1050].) The court then gave the following general analysis of the problem: "It has often been recognized by this Court that there are some limitations upon the extent to which a state will be required by the full faith and credit clause to enforce even the judgment of another state, in contravention of its own statutes or policy. [Citations.] [¶] *In the case of statutes, the extra-state effect of which Congress has not prescribed, where the policy of one state comes into conflict with that of another, the necessity of some accommodation of the conflicting interests of the two states is still more apparent. A rigid and literal enforcement of the full faith and credit clause, without regard to the statute of the forum, would lead to the absurd result that, wherever the conflict arises, the statute of each state must be enforced in the courts of the other, but cannot be in its own.* Unless by force of that clause a greater effect is thus to be given to a state statute abroad than the clause permits it to have at home, it is unavoidable that this Court determine for itself the extent to which the statute of one state may qualify or deny rights asserted under the statute of another. [Citations.] [¶] The necessity is not any the less whether the statute and policy of the forum is set up as a defense to a suit brought under the foreign statute or the foreign statute is set up as a defense to a suit or proceedings under the local statute. In either case, the conflict is the same. In each, rights claimed under one statute prevail only by denying effect to the other. *In both the conflict is to be resolved, not by giving automatic effect to the full faith and credit clause, compelling the courts of each state to subordinate its own statutes to those of the other, but by appraising the governmental interests of each jurisdiction, and turning the scale of decision according to their weight.*" (*Alaska Packers Asso., supra*, 294 U.S. at pp. 546-547 [55 S.Ct. at pp. 523-524, 79 L.Ed. at pp. 1051-1052], italics added.)

Applying these principles, the court found that California's interest in the present matter outweighed Alaska's: "The enactment of the present statute of California was within state power and infringes no constitutional provision.

Prima facie every state is entitled to enforce in its own courts its own statutes, lawfully enacted. One who challenges that right, because of the force given to a conflicting statute of another state by the full faith and credit clause, assumes the burden of showing, upon some rational basis, that of the conflicting interests involved those of the foreign state are superior to those of the forum. . . . [¶] . . . [California's] interest is sufficient to justify its legislation and is greater than that of Alaska, of which the employee was never a resident and to which he may never return. Nor should the fact that the employment was wholly to be performed in Alaska, although temporary in character, lead to any different result. It neither diminishes the interest of California in giving a remedy to the employee, who is a member of a class in the protection of which the state has an especial interest, nor does it enlarge the interest of Alaska whose temporary relationship with the employee has been severed." (*Alaska Packers Asso., supra*, 294 U.S. at pp. 547-550 [55 S.Ct. at pp. 524-525, 79 L.Ed at pp. 1052-1053].)

Finally, the court reiterated the rule of *Alaska Packers Asso.*, in *Pacific Ins. Co., supra*, 306 U.S. 493 [59 S.Ct. 629, 83 L.Ed. 940]. Again the court had to decide whether the California Supreme Court correctly upheld a California workers' compensation award in the face of a claim that a foreign jurisdiction's law governed; however, in this case the employee worked for a foreign (Massachusetts) corporation and suffered injury while on assignment in California. (*Pacific Ins. Co., supra*, at pp. 497-498 [59 S.Ct. at pp. 630-631, 83 L.Ed. at pp. 942-943].) Again the court affirmed the California court's judgment.

The court first found, as in *Alaska Packers Asso.*, that California and Massachusetts workers' compensation laws conflicted materially and both claimed exclusivity. (*Pacific Ins. Co., supra* 306 U.S. at p. 499 [59 S.Ct. at pp. 631-632, 83 L.Ed. at p. 943].) The court then held that California law should control: "To the extent that California is required to give full faith and credit to the conflicting Massachusetts statute it must be denied the right to apply in its own courts its own statute, constitutionally enacted in pursuance of its policy to provide compensation for employees injured in their employment within the state. It must withhold the remedy given by its own statute to its residents by way of compensation for medical, hospital, and nursing services rendered to the injured employee, and it must remit him to Massachusetts to secure the administrative remedy which that state has provided. We cannot say that the full faith and credit clause goes so far. [¶] While the purpose of that provision was to preserve rights acquired or confirmed under the public acts and judicial proceedings of one state by requiring recognition of their validity in other states, *the very nature of the federal union of states, to which are reserved some of the attributes of*

*sovereignty, precludes resort to the full faith and credit clause as the means for compelling a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate. . . .* [¶] . . . *[T]he full faith and credit clause does not require one state to substitute for its own statute, applicable to persons and events within it, the conflicting statute of another state, even though that statute is of controlling force in the courts of the state of its enactment with respect to the same persons and events.* [¶] This Court must determine for itself how far the full faith and credit clause compels the qualification or denial of rights asserted under the laws of one state, that of the forum, by the statute of another state. [Citation.] *But there would seem to be little room for the exercise of that function when the statute of the forum is the expression of domestic policy, in terms declared to be exclusive in its application to persons and events within the state.* Although Massachusetts has an interest in safeguarding the compensation of Massachusetts employees while temporarily abroad in the course of their employment, and may adopt that policy for itself, that could hardly be thought to support an application of the full faith and credit clause which would override the constitutional authority of another state to legislate for the bodily safety and economic protection of employees injured within it. Few matters could be deemed more appropriately the concern of the state in which the injury occurs or more completely within its power. . . . [¶] . . . [¶] . . . *full faith and credit does not here enable one state to legislate for the other or to project its laws across state lines so as to preclude the other from prescribing for itself the legal consequences of acts within it.*" (*Pacific Ins. Co., supra,* 306 U.S. at pp. 501-505 [59 S.Ct. at pp. 632-634, 83 L.Ed at pp. 944-946], italics added.)

The analysis developed in this line of cases is now the settled doctrine of the United States Supreme Court in applying the full faith and credit clause to conflicts of state laws in general. (*Baker* v. *General Motors Corp.* (1998) 522 U.S. 222, 230-232 [118 S.Ct. 657, 662-663, 139 L.Ed.2d 580, 590-591]; see *Phillips Petroleum Co.* v. *Shutts* (1985) 472 U.S. 797, 818-819 [105 S.Ct. 2965, 2978, 86 L.Ed.2d 628, 646] [forum state may choose its own law despite full faith and credit clause, provided state has " 'significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair' "]; see generally, Kramer, *Same-Sex Marriage, Conflict of Laws, and the Unconstitutional Public Policy Exception* (1997) 106 Yale L.J. 1965, 1976-1978 [Supreme Court's analysis reduces full faith and credit clause to a mere screening device as to state laws]; Gardbaum, *New Deal Constitutionalism and the Unshackling of the States* (1997) 64 U. Chi. L.Rev. 483, 561-563 [Supreme Court's analysis renders forum state's prima facie right to choose its own law virtually irrebuttable despite full faith and credit clause].)

Understandably, the California courts have adopted the United States Supreme Court's analysis. (*Hall* v. *University of Nevada* (1977) 74 Cal.App.3d 280, 283, 284-285 [141 Cal.Rptr. 439], affd. *sub nom. Nevada* v. *Hall* (1979) 440 U.S. 410 [99 S.Ct. 1182, 59 L.Ed.2d 416] [refusing to apply Nevada statute waiving sovereign immunity for personal injury but limiting waiver to $25,000 per claimant]; see *State of Oregon* v. *Superior Court* (1994) 24 Cal.App.4th 1550, 1562 [29 Cal.Rptr.2d 909]; see generally, 7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, §§ 23-26, pp. 68-71.)

 In light of the above, defendant's full faith and credit clause argument must fail. Section 12021(a)(1) deals with " 'a subject matter concerning which [California] is competent to legislate.' " (*Baker* v. *General Motors Corp., supra*, 522 U.S. at p. 232 [118 S.Ct. at p. 663, 139 L.Ed.2d at p. 592], quoting *Pacific Ins. Co., supra*, 306 U.S. at p. 501 [59 S.Ct. at p. 632, 83 L.Ed. at p. 944].) It is "the expression of [California's] domestic policy, in terms declared to be exclusive in its application to persons and events within the state." (*Pacific Ins. Co., supra,* 306 U.S. at pp. 502-503 [59 S.Ct. at p. 633, 83 L.Ed. at p. 945].) California's "significant contact" with defendant, a California resident, creates a " 'state interest[], such that choice of its law is neither arbitrary nor fundamentally unfair.' " (*Phillips Petroleum Co.* v. *Shutts, supra*, 472 U.S. at p. 818 [105 S.Ct. at p. 2978, 86 L.Ed.2d at p. 646].)

Moreover, California's enforcement of the right conferred by the Arizona statute would be "obnoxious to the public policy of the forum." (*Clapper, supra*, 286 U.S. at p. 160 [52 S.Ct. at p. 576, 76 L.Ed. at p. 1036].) There can be few more significant public policies of this state than that of protecting the safety of its citizens by barring convicted felons, persons who have proved unfit to be entrusted with firearms, from possessing them. "The purpose of [section 12021] is to protect public welfare by precluding the possession of guns by those who are more likely to use them for improper purposes. [Citation.] Due to the potential for death or great bodily injury from the improper use of firearms, public policy generally abhors even momentary possession of guns by convicted felons who, the Legislature has found, are more likely to misuse them." (*People* v. *Pepper* (1996) 41 Cal.App.4th 1029, 1037-1038 [48 Cal.Rptr.2d 877].)

 Arizona, on the other hand, has no current contact with defendant. Nor does it have any discernible interest in "project[ing] its laws across state lines so as to preclude [California] from prescribing for itself the legal consequence[]" of possession of firearms by a convicted felon in California. (*Pacific Ins. Co., supra*, 306 U.S. at pp. 504-505 [59 S.Ct. at p. 634, 83 L.Ed. at p. 946].)

The full faith and credit clause does not preclude California from carrying out its public policy of prohibiting convicted felons within its borders from possessing firearms merely because defendant could lawfully possess firearms in Arizona.

DISPOSITION

The judgment is affirmed.

Morrison, J., and Kolkey, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 28, 1999.