[No. S103324. Apr. 8, 2004.]

THE PEOPLE, Plaintiff and Appellant, v.
JAMES LEONARD LAINO, Defendant and Respondent.

### COUNSEL

Paul J. Pfingst and Bonnie M. Dumanis, District Attorneys, Charles E. Nickel, Thomas F. McArdle, Anthony Lovett and Josephine A. Kiernan, Deputy District Attorneys, for Plaintiff and Appellant.

Steven J. Carroll, Public Defender, Michael Begovich and Matthew C. Braner, Deputy Public Defenders, for Defendant and Respondent.

### OPINION

**MORENO, J.**—In 1992, defendant pleaded guilty in Arizona to an aggravated assault with a handgun against his wife. As a condition of probation, he successfully completed a domestic violence "diversion" program in Arizona, which resulted in a judgment of dismissal. He argues that the Arizona judgment of dismissal effectively negated his earlier guilty plea under Arizona law, precluding its use as a prior conviction in the current proceeding. He also argues that the full faith and credit clause of the United States Constitution (U.S. Const., art. IV, § 1) precludes our court from deciding, under California law, whether his Arizona guilty plea constitutes a "strike" under California's three strikes law.

We granted review to resolve the following issues: (1) whether California must give full faith and credit to the Arizona judgment of dismissal and thus decide, under Arizona law, whether defendant suffered a prior conviction for purposes of California's three strikes law; and (2) assuming California law applies, whether the Arizona guilty plea, followed by a dismissal upon the completion of probation, constitutes a prior conviction under the three strikes law.

We hold that the full faith and credit clause does not bar our courts from deciding this issue under California law. We further hold that under California law, defendant suffered a prior conviction by reason of his guilty plea in Arizona.

## I.  PROCEEDINGS BELOW

### A.  *The California Crime*

On September 11, 2000, the People filed a two-count information charging defendant with grand theft of personal property from an elder (Pen. Code, § 368, subd. (d))[1] and grand theft (§ 487, subd. (a)). The information also alleged that defendant suffered a prior conviction in 1992 in Arizona for aggravated assault with a handgun against his wife. Defendant pleaded not guilty and denied the strike allegation. At the preliminary hearing, the People adduced evidence that defendant lived with his 95-year-old grandmother and, without her permission, obtained her Wells Fargo ATM card. Thereafter, between March 11, 2000 and April 9, 2000, he accessed her bank account on 31 separate occasions and withdrew a total of $5,319.53. On October 31, 2000, pursuant to a plea agreement, defendant pleaded guilty to grand theft from an elder (§ 368, subd. (d)); the grand theft count (§ 487, subd. (a)) was dismissed. The parties agreed to put over sentencing and conduct a bench trial on the validity of the Arizona guilty plea for three strikes purposes.

### B.  *The Arizona Prior Conviction*

On December 21, 2000, the bench trial commenced. The evidence showed that, on October 6, 1992, defendant was charged in Arizona with aggravated assault, to wit, assaulting his wife with a handgun, a class 3 felony.[2] On December 9, 1992, defendant, pursuant to a written plea agreement, entered a plea of guilty to the charge, and the court followed the procedures outlined in Arizona Revised Statutes, section 13-3601, former subdivision (H).[3] The court questioned defendant concerning the factual basis of his plea and the minute order provided: "IT IS THE JUDGMENT OF THE COURT that there is a factual basis for the plea. The plea is accepted. Entry of judgment of guilt is deferred." The court further ordered that "sentencing [take place] on January 21, 1993."

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] Felonies in Arizona are classified, for the purpose of sentencing, into six categories: class 1, 2, 3, 4, 5 or 6 felonies. (Ariz. Rev. Stat., § 13-601.) The most serious felonies are class 1 felonies, such as first and second degree murder. (Ariz. Rev. Stat., § 13-1104, subd. (B), § 13-1105, subd. (C).) Class 6 felonies include possession of burglary tools (Ariz. Rev. Stat., § 13-1505, subd. (B)) and theft of a motor vehicle (Ariz. Rev. Stat., § 13-1802, subd. (C)). Class 3 felonies include residential burglary (Ariz. Rev. Stat., § 13-1507, subd. (B)) and aggravated robbery (robbery in concert) (Ariz. Rev. Stat., § 13-1903, subd. (B)).

[3] While the statute is not entitled as such, Arizona courts have sometimes described the Arizona Revised Statutes section 13-3601 domestic violence statutory scheme as a diversion scheme. (See, e.g., *State v. Aguilar* (1992) 171 Ariz. 444 [831 P.2d 443, 448] ["[t]he domestic violence statutory scheme details specific procedures to be followed from arrest to completion of diversion"].)

On January 21, 1993, the court prepared a document entitled "SENTENCE OF PROBATION—DEFERRAL OF ENTRY OF JUDGMENT OF GUILT." The document memorialized that defendant waived his right to a court or jury trial and "has entered a plea of guilty." The document also noted that "[p]ursuant to [Arizona Revised Statutes, former] [s]ection 13-3601[, subdivision] (H), without entering a judgment of guilt and with the concurrence of the prosecutor and consent of the defendant, the Court defers further proceed-. ings and places the defendant on probation" for aggravated assault with a handgun.[4] The document further provided: "As punishment for this/these crime(s) [¶] IT IS ORDERED suspending imposition of sentence and placing the Defendant on Probation for a period of three (3) YEARS, commencing this date, under the supervision of the Adult Probation Department of this Court, in accordance with the formal Conditions of Probation signed by the Court." The document also provided: "IT IS ORDERED that the defendant comply with all 16 standard conditions of probation" and that he "participate in the Pima County Adult Diversion Domestic Violence program and that he complete said program."

Nearly three months later, on April 12, 1993, the court conducted a probation violation hearing. Defendant was present and out of custody. The hearing resulted in an amendment to defendant's "Conditions of Probation previously imposed," adding the condition that "defendant have no contact with [his wife] or her residence except for purposes of exercising visitation granted in [his] domestic relations case . . . ."

On May 24, 1993, defendant was released from custody upon posting $2,000 bail. The record before us does not reveal why defendant was in custody, but a minute entry for June 15, 1993 states that the "Court having found defendant violated the terms and conditions of probation, [¶] It Is

---

[4] Arizona Revised Statutes section 13-3601, subdivision (H) (since amended and redesignated as subdivision (M)) provided: "If the defendant is found guilty of an offense included in domestic violence and if probation is otherwise available for that offense, the court may, without entering a judgment of guilt and with the concurrence of the prosecutor and consent of the defendant, defer further proceedings and place the defendant on probation as provided in this subsection. The terms and conditions of probation shall include those necessary to provide for the protection of the alleged victim and other specifically designated persons and additional conditions and requirements which the court deems appropriate, including imposition of a fine, incarceration of the defendant in a county jail, payment of restitution and any counseling or diversionary programs available to the defendant. On violation of a term or condition of probation, the court may enter an adjudication of guilt and proceed as otherwise provided for revocation of probation. On fulfillment of the terms and conditions of probation, the court shall discharge the defendant and dismiss the proceedings against the defendant. This subsection does not apply in any case in which the defendant has previously been found guilty under this section, or in which charges under this section have previously been dismissed in accordance with this subsection." Arizona Revised Statues section 13-3601 is silent on whether a plea of guilty constitutes a prior conviction for purposes of its habitual criminal statutes. (See discussion *post*, at pp. 887–888, fn. 8.)

Ordered imposition of sentence is suspended and defendant reinstated on probation on the same terms and conditions as previously imposed; the Court is reinstating the defendant because the probation officer indicates to the court that defendant has not been a problem. It Is Ordered defendant stay away from his wife." The minute entry further noted: "Filed In Court: Notice of Rights of Review After Conviction."

On March 2, 1994, defendant moved to terminate his probation. The motion was not opposed by the probation department but was opposed by the People. The court ordered that supervised probation be terminated and that the term of probation be modified to two years from the date of sentencing.

On April 21, 1995, a document entitled "PETITION AND ORDER OF DISCHARGE FROM PROBATION," noted that, on January 21, 1993, "defendant was placed on probation for Aggravated Assault With a Deadly Weapon or Dangerous Instrument, to wit: a Handgun/Domestic Violence, a Class 3 Felony . . . ." The document further noted that "defendant has completed the period of probation." The court therefore ordered that "defendant is hereby discharged from probation in this case" and "[a]ccording to [Arizona Revised Statutes section 13-3601, former subdivision (H)], the proceedings against the defendant are dismissed."

## C.  Trial Court Ruling

The trial court below cited *People v. Castello* (1998) 65 Cal.App.4th 1242, 1253–1255 [77 Cal.Rptr.2d 314] (*Castello*), for the proposition that California law applies in determining whether the Arizona guilty plea was a strike under the three strikes law. The trial court ruled that a dismissal under the Arizona statute was more akin to a dismissal under the drug offender deferred entry of judgment program (§§ 1000.1–1000.8),[5] than to an expungement under section 1203.4, subdivision (a).[6] It therefore found that the prior conviction

---

[5]  Section 1000.1, subdivision (a)(3) provides, in relevant part, that to enter the drug-offender deferred entry of judgment program, a defendant is required to plead guilty and waive time for the pronouncement of judgment. Section 1000.1, subdivision (d) provides that upon successful completion of a deferred entry of judgment program, "[a] defendant's plea of guilty pursuant to this chapter shall not constitute a conviction for any purpose unless a judgment of guilty is entered pursuant to Section 1000.3."

[6]  Section 1203.4, subdivision (a) provides, in relevant part, that "[i]n any case in which a defendant has fulfilled the conditions of probation for the entire period of probation . . . or in any other case in which a court, in its discretion and the interests of justice, determines that a defendant should be granted the relief available under this section, the defendant shall . . . be permitted . . . to withdraw his or her plea of guilty or plea of nolo contendre and enter a plea of not guilty; or, if he or she has been convicted after a plea of not guilty . . . the court shall thereupon dismiss the accusations or information against the defendant except as noted below . . . . However, in any subsequent prosecution of the defendant . . . for any other offense,

allegation had not been proved because a guilty plea under the drug-offender deferred entry of judgment program cannot be used as a prior conviction if the defendant has successfully completed the program.

### D. Court of Appeal Ruling

The Court of Appeal reversed,[7] relying on its decision in *Castello, supra,* 65 Cal.App.4th 1242. In *Castello,* the same Court of Appeal held that a Florida guilty plea constituted a strike under California law, despite the fact that the Florida court, after the defendant's guilty plea, withheld the adjudication of guilt until after the defendant completed probation. *Castello* reasoned that for purposes of the three strikes law, a conviction occurs at the time of the guilty plea. (*Id.* at pp. 1245, 1252–1253.) *Castello* noted that it was "a matter of academic interest only" that Florida courts might not consider the defendant's guilty plea a conviction in Florida because California law controlled. (*Id.* at p. 1255.) *Castello,* however, did not discuss the full faith and credit clause.

Under *Castello,* the Court of Appeal held that defendant was convicted at the time he entered his guilty plea to the Arizona offense. The Court of Appeal added: "The fact of his completion of probation, and the subsequent dismissal of the charges, does not affect this central, and dispositive, fact. . . . [F]or purposes of the three strikes law, nothing in the subsequent history of the case in Arizona may now be interposed to require a contrary conclusion."

Relying on *People v. Shear* (1999) 71 Cal.App.4th 278, 284–289 [83 Cal.Rptr.2d 707] (*Shear*), the Court of Appeal addressed defendant's full faith and credit argument. In *Shear,* the defendant was convicted of being a felon in possession of a firearm (§ 12021, subd. (a)), based on an Arizona prior felony conviction. Because Arizona law had restored his right to possess a firearm upon completion of probation, the defendant argued that the full faith and credit clause prohibited California from using that conviction to support a charge of being a felon in possession of a firearm. The *Shear* court disagreed. "Although state statutes arguably fall within the literal terms of the [full faith and credit] clause, the United States Supreme Court . . . has significantly limited the clause's application to statutes." (*Shear, supra,* 71 Cal.App.4th at p. 284.)

---

the prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed."

[7] Defendant argues that the People's appeal of a judgment of "acquittal" after the court trial on the prior conviction allegation is "barred under the principles of procedural due process and collateral estoppel set out in *People v. Mitchell* (2000) 81 Cal.App.4th 132 [96 Cal.Rptr.2d 401]." Not so. We recently held to the contrary in *People v. Barragan* (2003) 32 Cal.4th 236 [9 Cal.Rptr.3d 76, 83 P.3d 480].

The *Shear* court relied extensively on *Alaska Packers Assn. v. I.A.C.* (1935) 294 U.S. 532 [79 L.Ed. 1044, 55 S.Ct. 518], in which the high court stated: "It has often been recognized by this Court that there are some limitations upon the extent to which a state will be required by the full faith and credit clause to enforce even the judgment of another state, in contravention of its own statutes or policy. [Citations.] [¶] In the case of statutes, the extra-state effect of which Congress has not prescribed, where the policy of one state statute comes into conflict with that of another, the necessity of some accommodation of the conflicting interests of the two states is still more apparent. A rigid and literal enforcement of the full faith and credit clause, without regard to the statute of the forum, would lead to the absurd result that, wherever the conflict arises, the statutes of each state must be enforced in the courts of the other, but cannot be in its own. [¶] . . . [¶] . . . [T]he conflict is to be resolved, not by giving automatic effect to the full faith and credit clause, compelling the courts of each state to subordinate its own statutes to those of the other, but by appraising the governmental interests of each jurisdiction, and turning the scale of decision according to their weight." (294 U.S. at pp. 546–547.)

Based on the foregoing authority, *Shear* held that the full faith and credit clause did not require California to substitute the Arizona statute for its own statute because California, as the forum state, has a significant state interest in applying its own law: "There can be few more significant public policies of this state than that of protecting the safety of its citizens." (*Shear, supra,* 71 Cal.App.4th at p. 288.) Citing *Shear*, the Court of Appeal below held that defendant's full faith and credit argument was "without substance."

## II. DISCUSSION

Defendant does not dispute the rule articulated in *Shear*. He claims that he is not asking California to substitute the Arizona statute for its own statute, but to simply give full faith and credit to the Arizona court's judgment of dismissal which, under Arizona law, prevents such a guilty plea from being used to enhance a sentence in a subsequent Arizona criminal proceeding.[8]

---

[8] This claim is questionable. The Arizona Supreme Court has suggested that, despite a defendant's successful completion of probation under Arizona Revised Statutes section 13-3601, such a guilty plea would constitute a prior conviction for purposes of the Arizona habitual criminal statute. Specifically, in *State v. Green* (1993) 174 Ariz. 586, 588 [852 P.2d 401, 403], the Arizona Supreme Court held that a defendant may receive an enhanced sentence under the Arizona habitual criminal statute where he or she pleads guilty, is placed on probation pursuant to Arizona Revised Statutes section 13-3601, former subdivision (H), and commits a new offense *during* the probationary period. The court stated: "Probation for a felony granted pursuant to section 13-3601(H) is 'probation for a conviction of a felony offense' within the enhancement provisions of [the habitual criminal statute]" because "[t]he fact that no formal judgment had been entered did not change the fact that admission of guilt

■ As explained below, we hold that the full faith and credit clause does not preclude a state from determining under its own laws whether a guilty plea in another jurisdiction constitutes a prior conviction for purposes of its habitual criminal statute.

### A. Full Faith and Credit

■ Article IV, section 1 of the United States Constitution provides, in pertinent part, that "Full Faith and Credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." Title 28, section 1738 of the United States Code implements the full faith and credit clause as follows: "Such Acts, records and judicial proceedings or copies thereof so authenticated, shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." The full faith and credit clause applies to matters between states (see, e.g., *Sun Oil Co. v. Wortman* (1988) 486 U.S. 717, 722–724 [100 L.Ed.2d 743, 108 S.Ct. 2117]) and to matters between a state and the federal government. (See, e.g., *Migra v. Warren City School Dist. Bd. of Education* (1984) 465 U.S. 75, 81 [79 L.Ed.2d 56, 104 S.Ct. 892].)

Defendant claims that the full faith and credit clause "is 'exacting' as to judgments," and therefore the clause "applies without qualification to the Arizona *judgment* of dismissal." Not so. Although it has been held in civil cases that "the full faith and credit command 'is exacting' with respect to '[a] final judgment . . . rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment' " (*Franchise Tax Bd. of Cal. v. Hyatt* (2003) 538 U.S. 488, 494 [155 L.Ed.2d 702, 123 S.Ct. 1683]), we have stated that the full faith and credit clause " 'does not require that sister States enforce a foreign penal judgment.' " (*People v. Bacigalupo* (1991) 1 Cal.4th 103, 133, fn. 9 [2 Cal.Rptr.2d 335, 820 P.2d 559] (*Bacigalupo*), citing *Huntington v. Attrill* (1892) 146 U.S. 657 [36 L.Ed. 1123, 13 S.Ct. 224] (*Attrill*), and *Nelson v. George* (1970) 399 U.S. 224 [26 L.Ed.2d 578, 90 S.Ct. 1963] (*Nelson*).)

---

showed [the defendant] to be a threat to society." (*Green, supra,* 852 P.2d at 403.) Thus, the court's language in *Green* suggests that a conviction dismissed under Arizona Revised Statutes, section 13-3601, former subdivision (H) would nonetheless constitute a prior conviction under Arizona's habitual criminal statute because the "admission of guilt show[ing] [the defendant] to be a threat to society" is not blotted out by the fact that he committed the new crime during, *or after,* the probationary period. We need not decide this question here, given our conclusion that the full faith and credit clause does not preclude California courts from determining whether defendant's Arizona guilty plea constitutes a prior conviction under California law.

■ In *Attrill*, the high court recognized that there are limitations upon the extent to which a state may be required by the full faith and credit clause to enforce the penal judgment of another state in contravention of its own statutes or policy. There, a judgment creditor had previously secured a judgment against the former director of a New York corporation for transferring stock to members of his family in order to defraud creditors. The judgment creditor sought to enforce this judgment in Maryland, but the Maryland Court of Appeals dismissed the creditor's bill in equity on the grounds that the underlying judgment was a penalty under the New York statute and therefore not subject to the full faith and credit clause. (*Attrill, supra*, 146 U.S. at pp. 663–664.)

■ In order to determine whether a "penalty" was subject to the full faith and credit clause, the high court recalled the "fundamental maxim of international law, stated by Chief Justice Marshall in the fewest possible words: 'The courts of no country execute the penal laws of another.' " (*Attrill, supra*, 146 U.S. at p. 666.) The high court then carefully distinguished the words "penal" and "penalty," noting that the full faith and credit clause does not obligate one state to enforce the penal laws of another state: "Crimes and offences against the laws of any state can only be defined, prosecuted and pardoned by the sovereign authority of that State; and the authorities, legislative, executive or judicial, of other States take no action with regard to them, except by way of extradition to surrender offenders to the State whose laws they have violated, and whose peace they have broken." (*Id.* at p. 669; see also *Williams v. North Carolina* (1942) 317 U.S. 287, 295, fn. 6 [87 L.Ed. 279, 63 S.Ct. 207] ["It has been repeatedly held that the full faith and credit clause does not require one state to enforce the penal laws of . . . another."]

The high court affirmed this aspect of its *Attrill* holding in *Nelson, supra*, 399 U.S. 224, in which the petitioner was incarcerated in a California state prison for robbery. During this custody period, the petitioner was transported to North Carolina to stand trial on a robbery charge. He was convicted and thereafter returned to California to serve the remainder of his California sentence. North Carolina then placed a detainer on the petitioner. (*Id.* at pp. 225–226.) A federal district court held that the petitioner was foreclosed from challenging the North Carolina conviction while he was incarcerated in California. (*Id.* at p. 226.) On appeal, the petitioner contended that the mere existence of the detainer amounted to "a form of custody" because it affected his custodial classification and probability of parole on the California sentence. (*Id.* at p. 227.)

In discussing the petitioner's claim, the high court, following *Attrill*, stated that "the Full Faith and Credit Clause does not require that sister States enforce a foreign penal judgment" (*Nelson, supra*, 399 U.S. at p. 229), and observed that "California is free to consider, what effect, if any, it will give to the North Carolina detainer in terms of [the petitioner's] present 'custody.' " (*Ibid.*) In a footnote discussing California's ultimate duty to extradite petitioner, the high court underscored the inapplicability of the full faith and credit clause, stating: "[T]he Full Faith and Credit Clause does not require California to enforce the North Carolina penal judgment in any way." (*Id.* at p. 229, fn. 6.)

And in *Bacigalupo*, we held that nothing in the full faith and credit clause required us to adopt the New York rule that criminal charges dismissed as part of a plea bargain constitute an acquittal. Instead, we held that we were free to more narrowly define "acquittal" as "a judicial determination of the truth or falsity of the charge," as provided under California law. (*Bacigalupo, supra*, 1 Cal.4th at pp. 133–134.) We therefore concluded that the facts underlying the New York charges were admissible in a California death penalty case as evidence of an aggravating circumstance under section 190.3, factor (b). (*Bacigalupo*, at p. 134.)

The holdings in *Attrill, Williams, Nelson*, and *Bacigalupo* are fatal to defendant's argument. If California need not give full faith and credit to penal judgments of another state, then it is free to determine under its own laws whether defendant's Arizona plea constitutes a conviction for purposes of the three strikes law, notwithstanding the subsequent Arizona judgment discharging defendant from probation and dismissing the proceedings.

■ Indeed, there is general agreement that the full faith and credit clause, even if it does apply to criminal judgments, does not prevent a state from (1) enhancing a sentence based on an out-of-state conviction for which the defendant has been pardoned; and (2) determining under its own laws whether a guilty plea in another jurisdiction constitutes a prior conviction. In either instance, the treatment accorded by a sister state to a judgment or other criminal proceeding does not preclude our state from using that judgment or proceeding to enhance a sentence under our habitual criminal statutes.[9]

---

[9] In *People v. Vasquez* (2001) 25 Cal.4th 1225 [108 Cal.Rptr.2d 610, 25 P.3d 1090], we decided that an expunged Texas conviction could be considered under California's Sexually Violent Predators Act. (Welf. & Inst. Code, § 6600 et seq.) The parties in *Vasquez* stipulated that the Texas proceeding "undisputedly 'result[ed] in a conviction' [citation] for an offense in another state containing all of the elements of a listed California offense." (*Vasquez, supra*, 25 Cal.4th at p. 1233.) We therefore did not decide the issue advanced in the present case, which is whether the full faith and credit clause compels us to resort to the foreign state's definition of "conviction" as a predicate to utilizing such "conviction" in our state. Indeed, full faith and credit was not discussed at all.

■ For example, in *People v. Dutton* (1937) 9 Cal.2d 505 [71 P.2d 218] (*Dutton*), we squarely rejected the argument that the full faith and credit clause prevented the use of an out-of-state prior conviction to enhance the defendant's sentence after the defendant had been pardoned for that offense. In *Dutton*, we first referenced the companion case of *People v. Biggs* (1937) 9 Cal.2d 508 [71 P.2d 214], in which we rejected the contention that an out-of-state prior conviction for which the defendant had been pardoned by the state's governor could not be considered under our habitual criminal statutes. (*Dutton, supra*, 9 Cal.2d at p. 506.) As we explained in *Biggs*: "To say, however, that the offender is 'a new man', and 'as innocent as if he had never committed the offense', is to ignore the difference between the crime and the criminal. A person adjudged guilty of an offense is a convicted criminal, though pardoned; he may be deserving of punishment, though left unpunished; and the law may regard him as more dangerous to society than one never found guilty of crime, though it places no restraints upon him following his conviction." (*Biggs, supra*, 9 Cal.2d at p. 511.)

We concluded in *Dutton*: "Defendant in the instant case advances several contentions not made in the [*Biggs*] case. He urges, first, that the trial court denied full faith and credit to the act of the governor of Wisconsin, in violation of article IV, section 1, of the federal Constitution. No authority is cited to support the remarkable assertion that California, in determining the appropriate punishment for a person convicted of crime in this state, is denying effect to acts of the chief executive of Wisconsin. He pardoned the defendant for the first offense; this state punishes him for the second offense only, and full faith and credit is not involved." (*Dutton, supra*, 9 Cal.2d at p. 506.)

But defendant points out that we implicitly rejected the *Dutton* holding in *People v. Terry* (1964) 61 Cal.2d 137 [37 Cal.Rptr. 605, 390 P.2d 381], in which we held that under the full faith and credit clause, a certified copy of the defendant's conviction for armed robbery in Oklahoma, for which the defendant had received a pardon, could not be admitted into evidence in the penalty trial of a subsequent California death penalty case: "Under the full faith and credit clause of the United States Constitution, article IV, section 1, California must give an administrative decision of Oklahoma, represented here by the pardon, the same effect in California as that decision would have borne in Oklahoma. [*Magnolia Petroleum Co. v. Hunt* (1943) 320 U.S. 430, 435, 443 [88 L.Ed. 149, 64 S.Ct. 208].] Since Oklahoma courts treat the pardoned defendant as a person not convicted of crime [*Cloud v. State Election Board* (1934) 1934 OK 481 [169 Okla. 363, 365–366, 36 P.2d 20]],

California must defer to that definition of defendant's status. [See *Gibson v. Westoby* (1953) 115 Cal.App.2d 273 [251 P.2d 1003] [California must give full faith and credit to a sister state determination of status of incompetency]; *Estate of Smith* (1948) 86 Cal.App.2d 456 [195 P.2d 842] [same for status of adopted child] . . . ." (*Terry, supra,* 61 Cal.2d at p. 148, original fns. incorporated in brackets.)

The tension between *Terry* and *Dutton* has not gone unnoticed. (See, e.g., 66 Ops.Cal.Atty.Gen. 343, 348 (1983) ["application of the full faith and credit clause to pardoned felons in California is confused by [*Dutton* and *Terry*] two conflicting California Supreme Court cases"]; *People v. Norton* (1978) 80 Cal.App.3dSupp. 14, 19 [146 Cal.Rptr. 343] ["there is a conflict [between *Dutton* and *Terry* as to] whether a pardoned offense may be used for other purposes"]; *New Mexico v. Edmondson* (1991) 112 N.M. 654 [818 P.2d 855, 859] [*Terry* rejected *Dutton* sub silentio].) For the reasons stated below, we conclude that *Dutton* has the better view.

Our holding in *Dutton* followed the reasoning set forth in *Carlesi v. New York* (1914) 233 U.S. 51 [58 L.Ed. 843, 34 S.Ct. 576], in which the defendant challenged a New York habitual criminal statute that took into consideration a prior federal conviction for which the defendant had been pardoned by the President. The high court stated: "The issue is a narrow one and involves not the determination of the operation and effect of a pardon within the jurisdiction of the sovereignty granting it, but simply requires it to be decided how far a pardon granted as to an offense committed against the United States operates . . . [in] a subsequent state offense." (*Id.* at p. 57.) Because "the act of the State in taking into consideration a prior offense committed against the United States after pardon . . . was not in any degree a punishment for the prior crime but was simply an exercise by the State of a local power within its exclusive cognizance, there could be no violation of the Constitution of the United States." (*Ibid.*)

■ *Dutton, Biggs,* and *Carlesi,* when read together, express the view that because a pardon does not "wipe out" the existence of the prior crime, that conviction may be used to enhance a sentence under a habitual criminal statute because the defendant is being punished only for the second offense and the full faith and credit clause is not implicated. And, as it was in 1937 when *Dutton* was decided, the weight of authority in the United States today is that the full faith and credit clause does not prevent a conviction for which the defendant has been pardoned from being used to enhance a sentence under another state's habitual criminal statute. (See generally Annot., Pardoned or Expunged Conviction as "Prior Offense" Under State Statute or Regulation Enhancing Punishment for Subsequent Conviction (2002) 97 A.L.R.5th 293, and cases cited.) As stated in *Groseclose v. Plummer* (9th Cir.

1939) 106 F.2d 311, 313: "Notwithstanding the . . . pardons, the stubborn fact remains that the habit of crime was upon [defendant]. The executive clemency of one state could not, under any law of such state, prevent a sister state from taking cognizance of plain facts, and from applying its police laws to them." *People v. Terry, supra,* 61 Cal.2d 137, is therefore overruled to the extent it is inconsistent with the views expressed herein.

Finally, our conclusion that the treatment accorded by a sister state to a judgment or other criminal proceeding does not preclude our state from using that judgment or proceeding to enhance a sentence under our habitual criminal statutes is consistent with the weight of authority from other jurisdictions.

In *New Mexico v. Edmonson, supra,* 818 P.2d 855, for example, the issue before the court was whether a Texas conviction that was "set aside" after completion of probation, and which could not be considered under the Texas habitual criminal statute, could nonetheless be considered under the New Mexico habitual criminal statute. Citing *Nelson* and *Attrill,* the court stated "[i]t is not at all clear that the Full Faith and Credit Clause applies to criminal matters." (*Edmonson, supra,* 818 P.2d at p. 860.) "Even assuming that it does, we believe that it would rarely, if ever, compel one state to be governed by the law of a second state regarding the punishment that can be imposed for a crime committed within the first state's boundaries." (*Ibid.*) The court therefore held that the full faith and credit clause did not apply: "[T]he deterrent and punitive purposes of [habitual criminal] statutes argue strongly in favor of upholding their provisions against any challenge under the Full Faith and Credit Clause." (*Id.* at p. 861.) As New Mexico treated a guilty plea as a "conviction" for purposes of its habitual criminal statute, the court affirmed the use of the Texas conviction for purposes of the New Mexico habitual criminal statute. (*Ibid.*)

In *McClish v. Arkansas* (1998) 331 Ark. 295 [962 S.W.2d 332], the state, pursuant to its habitual offender statute, introduced evidence of the defendant's Oklahoma conviction for rape during the sentencing phase of defendant's robbery trial. The Oklahoma court had accepted the defendant's no contest plea to the rape charge, deferred imposition of judgment and placed him on probation; upon his successful completion of probation, the defendant was discharged without a court judgment of guilt, the plea was expunged from the record, and the charge was dismissed with prejudice to any further action. (*Id.* at p. 333.) The court applied Arkansas law and held that the defendant had suffered a conviction when his no contest plea was accepted. In so holding, it rejected the defendant's argument that the Oklahoma plea should not be admissible in an Arkansas court for sentence enhancement purposes because an Oklahoma court would prohibit the use of that plea for

such purposes. The court stated, "the State of Arkansas is undeniably free to independently legislate its own sentencing policy and procedures, which may be contrary to the law of foreign states." (*Id.* at p. 335.)

In *Bui v. Ashcroft* (N.D.Tex., Jan. 31, 2003 No. 3:02-CV-1140-L) 2003 U.S. Dist. LEXIS 1565, Bui was deported based on a Texas "deferred adjudication," under which a Texas court, after receiving a plea of guilty or no contest, defers further proceedings without an adjudication of guilt and places the defendant on probation; upon successful completion of probation, the proceedings are dismissed and the defendant is discharged. Bui argued that the deferred adjudication was not a conviction under Texas law and, under the statutory counterpart to the federal constitution's full faith and credit clause,[10] the federal court must apply Texas law. The court disagreed: " '[A]ccording full faith and credit to a state judgment need not control the collateral consequences that flow from the judgment.' [Citation.] . . . '[T]he consequences which a state chooses to attach to a conviction in its courts for purposes of its own law are for it to say; but they cannot control the consequences to be given it in [another] proceeding . . . .' [Citation.]" (*Bui, supra,* 2003 U.S. Dist. LEXIS 1565, at pp. *5–*6.)

In *Poo v. Hood* (S.D.N.Y., Feb. 12, 1992 No. 89 CIV. 7874 (MBM)) 1992 U.S. Dist. LEXIS 1535 (*Hood*), petitioner's Florida guilty plea resulted in a disposition called "adjudication withheld," wherein the Florida court declines to convict the defendant if the defendant successfully completes probation. The petitioner argued that New York's considering of this conviction under its habitual offender statute violated full faith and credit. The court disagreed: "New York's statutory choice to treat a finding of guilt as the predicate to imposing a heavier penalty when a defendant commits another crime cannot violate the full faith and credit clause, regardless of how Florida chooses to treat the same event" (*id.* at pp. *15–*16) because the "full faith and credit clause does not lodge in the state of original conviction the power to control the effect of that conviction on later acts committed outside that state." (*Id.* at p. *17.)

At bottom, *Edmonson, McClish, Bui* and *Hood* stand for the proposition that, given a state's legitimate interest in enforcing its own sentencing procedures and policies for repeat offenders who commit crimes within the state, the full faith and credit clause does not bar a state from determining, under its own laws, whether an out-of-state guilty plea constitutes a "conviction" for purposes of a habitual criminal statute.[11] We agree. As stated in

---

[10] Title 28 United States Code section 1738; see discussion at page 888, *ante.*

[11] The full faith and credit clause has been unsuccessfully interposed in a variety of criminal contexts. See, for example, *State v. Langlands* (2003) 276 Ga. 721 [583 S.E.2d 18] (full faith and credit does not bar Georgia from treating out-of-state misdemeanor convictions as felonies in Georgia

*Hood*, "the profile of the shadow that conviction casts on later events is the business of the state where those later events occur." (*Hood, supra*, 1992 U.S. Dist. LEXIS 1535, p. *18.) We now turn to the question of whether defendant's Arizona conviction constitutes a "prior conviction" under the three strikes law.

## B. *Defendant's Conviction Is a Strike Under California Law*

The three strikes law imposes enhanced punishment, "[n]otwithstanding any other law, if a defendant has been convicted of a felony and it has been pled and proved that the defendant has one or more prior felony convictions . . . . " (§§ 667, subd. (c), 1170.12, subd. (a).) A prior conviction for purposes of the three strikes law includes "A conviction in another jurisdiction for an offense that, if committed in California, is punishable by imprisonment in the state prison. A prior conviction of a particular felony shall include a conviction in another jurisdiction for an offense that includes all of the elements of the particular felony as defined in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7." (§§ 667, subd. (d)(2), 1170.12, subd. (b)(2).) Assault with a firearm, defendant's crime, is included as a "prior conviction" under section 667.5, subdivision (c)(8) and section 1192.7, subdivision (c)(8).

The three strikes law continues: "The determination of whether a prior conviction is a prior felony conviction for purposes of [this section] shall be made upon the date of that prior conviction and is not affected by the sentence imposed unless the sentence automatically, upon the initial sentencing, converts the felony into a misdemeanor. None of the following dispositions shall affect the determination that a prior conviction is a prior felony . . . . [¶] (A) The suspension of imposition of judgment or sentence. [¶] (B) The stay of execution of sentence." (§§ 667, subd. (d)(1), 1170.12, subd. (b)(1).)

The three strikes law clearly provides that a prior conviction occurs upon "the date of that prior conviction and is not affected by the sentence imposed." (§§ 667, subd. (d)(1), 1170.12, subd. (b)(1).) The statutory language thus comports with the general California rule that " 'A plea of guilty constitutes a conviction.' [Citation.]" (*People v. Banks* (1959) 53 Cal.2d 370, 390–391 [1 Cal.Rptr. 669, 348 P.2d 102].) "Indeed, it is settled that for

---

where such convictions meet the specified statutory requirements); *People v. Alba* (2001) 189 Misc.2d 258 [730 N.Y.S.2d 191] (New York not required to give full faith and credit to another jurisdiction's directive that sentences run concurrently with one another); *Barker v. Ohio* (1980) 62 OhioSt.2d 35 [402 N.E.2d 550] (full faith and credit does not bar Ohio from expunging a West Virginia conviction for new Ohio resident even though West Virginia does not authorize an expungement for such conviction); *Oregon v. Calvin* (1966) 244 Ore. 402 [418 P.2d 821] (full faith and credit does not bar Oregon from considering California forgery under its habitual criminal statute even though forgery is not an included felony under California's habitual criminal statute).

purposes of a prior conviction statute, a conviction occurs at the time of entry of the guilty plea." (*Castello, supra,* 65 Cal.App.4th at p. 1253.) As we stated in *People v. Balderas* (1985) 41 Cal.3d 144, 203 [222 Cal.Rptr. 184, 711 P.2d 480], "For purposes of a 'prior conviction' statute, defendant suffers such a conviction when he pleads guilty." We affirmed this view with specific reference to the three strikes law in *People v. Rosbury* (1997) 15 Cal.4th 206, 210 [61 Cal.Rptr.2d 635, 932 P.2d 207], in which we cited with approval *People v. Williams* (1996) 49 Cal.App.4th 1632, 1636 [57 Cal.Rptr.2d 448] for its holding "that under the three strikes law 'when guilt is established, either by plea or verdict, the defendant stands convicted and thereafter has a prior conviction.' " (*Rosbury,* at p. 210.)

But defendant claims he was placed on "diversion" pursuant to section 13-3601, former subdivision (H) of the Arizona Revised Statutes, the "Arizona diversion statute," because he was statutorily obligated to complete a "diversion" program for domestic violence offenders. Upon completion of such program, his case was dismissed. Defendant therefore argues that he was not "convicted" under California law because the Arizona proceedings under section 13-3601, former subdivision (H) of the Arizona Revised Statutes were akin to proceedings under California's deferred entry of judgment program for drug offenders, under which a guilty plea, upon the successful completion of the program, "does not constitute a conviction for any purpose." (§ 1000.1, subd. (d).)

Defendant is incorrect. California has limited this statutory benefit to certain nonviolent drug offenders and, as will be shown below, has specifically *excluded* such a benefit where the offender has committed a crime involving domestic violence.

In 1972, California enacted its drug diversion program. (§§ 1000.1–1000.4, added by Stats. 1972, ch. 1255, § 17, p. 2469.) The statutory scheme provided that defendants eligible under this chapter could waive their right to a speedy trial and, by entering an approved drug diversion program, be diverted from criminal proceedings for no less than six months nor more than two years. (§ 1000.2.) No guilty plea was required. If the divertee performed unsatisfactorily, criminal proceedings were resumed. (§ 1000.3.) If the divertee successfully completed the program, criminal charges under this chapter were dismissed and the arrest upon which the diversion was based was deemed never to have occurred. (§§ 1000.3, 1000.5.)

Effective January 1, 1997, the Legislature replaced California's drug diversion program with the current deferred entry of judgment program. (Stats. 1996, ch. 1132, § 2.) Under the new program, an eligible defendant can enter a plea of guilty, participate in a drug rehabilitation program and,

upon completion of the program, have the charges dismissed. (§§ 1000–1000.2.) "A defendant's plea of guilty pursuant to this chapter shall not constitute a conviction for any purpose unless a judgment of guilt is entered pursuant to Section 1000.3." (§ 1000.1, subd. (d).)

Defendant places great reliance on this last provision, that "[a] defendant's plea of guilty pursuant to this chapter shall not constitute a conviction for any purpose . . . ." (§ 1000.1, subd. (d).) But this provision applies, by its terms, only to guilty pleas entered "pursuant to this chapter." There is nothing to indicate that the Legislature intended to change the general rule, discussed above, that a guilty plea constitutes a conviction. Instead, the Legislature simply decided to encourage individuals with a drug problem to enter a drug program by offering them the incentive that, upon completion of the drug program, their conviction would disappear.

Indeed, the fact that the Legislature intended to limit this statutory benefit to carefully chosen nonviolent drug offenders is aptly illustrated by the fact that, in 1995, the Legislature *repealed* the domestic violence misdemeanor diversion program,[12] specifically because of the serious nature of domestic violence. The Legislature declared: "Domestic violence is a serious and widespread crime. Between two and four million American women are beaten annually by their husbands or boyfriends; 1,400 women are killed each year by current or former husbands or boyfriends; domestic violence is the second leading cause of injury to women aged 15 to 44 years. [¶] . . . Until recently, domestic violence has not received sufficient priority in public policy concerning crime and public safety. According to an analysis of state statistics, about two-thirds of those arrested for felony spousal abuse were prosecuted, with 80 percent of those cases treated as misdemeanors. [¶] . . . Domestic violence has long-term effects that are disastrous for social policy and threatens the stability of the family and negatively impacts all family members, especially children, who learn that violence is an acceptable way to cope with stress or problems. . . . [¶] . . . Diversion programs for perpetrators of domestic violence, while worthwhile in intention and sometimes effective, are inadequate to address domestic violence as a serious crime [¶] . . . Therefore, the Legislature finds it important to treat domestic violence as a serious crime." (Stats. 1995, ch. 641, § 1, subds. (a)–(e), p. 5069.) Our state has *never* had a diversion program for domestic violence felonies that involve violence, such as aggravated assault with a handgun against a spouse, the

---

[12] In 1979, California enacted a diversion program for domestic violence misdemeanors (§§ 1000.6–1000.11, added by Stats. 1979, ch. 913, § 1, p. 3141), which diverted the participant from prosecution for neither less than six months nor longer than two years. No admission of guilt was required and, upon successful completion of the domestic violence diversion program, the criminal charges were dismissed, and the arrest upon which the diversion was based was deemed never to have occurred. (Former §§ 1000.8–1000.10, added by Stats. 1979, ch. 913, § 1, pp. 3142–3143.)

crime to which defendant entered a plea of guilty in Arizona. Defendant's analogy to our deferred entry of judgment program for drug offenders is inapt.

■ All that remains, therefore, is to determine whether defendant's Arizona guilty plea meets the requirements of a guilty plea under the three strikes law. It does. Defendant in the prior case waived his right to a court or jury trial and entered a plea of guilty to aggravated assault pursuant to a written plea agreement. The Arizona court questioned defendant, found there was a factual basis for his plea, and accepted the plea. Defendant was placed on probation and imposition of sentence was suspended. Our three strikes law specifically provides that the suspension of imposition of sentence does *not* affect the determination that such prior conviction constitutes a strike. (§§ 667, subd. (d)(1)(A), 1170.12, subd. (b)(1)(A).) Defendant was ordered to "comply with all 16 standard conditions of probation." The court subsequently found that defendant violated the conditions of his probation and filed a "Notice of Rights of Review After Conviction," advising defendant of his right to file a petition for *postconviction* relief.[13]

■ Defendant's plea of guilty to aggravated assault with a handgun constitutes a prior conviction under the three strikes law. (See §§ 667, subd. (d)(1), 1170.12, subd. (b)(2).) As stated by the court in *People v. Williams, supra,* 49 Cal.App.4th at page 1638: "The focus of the three strikes law is *conduct*: did the defendant commit a felony after having previously committed one or more serious or violent felonies? When a defendant pleads guilty to or is convicted of a felony, the law is satisfied factually that he or she committed it. When the deterrent effect of the law fails and the defendant subsequently commits another felony, he or she becomes a repeat offender and deserves harsher punishment, regardless of whether judgment and sentence have been pronounced on the initial offense. [¶] Given the focus and purpose of section 667 (b)–(i), we conclude that 'prior felony convictions' in section 667, subdivision (c), falls within the general rule illustrated in [*People v. Rhoads* (1990) 221 Cal.App.3d 56 [270 Cal.Rptr. 266]]: when guilt is established, either by plea or verdict, the defendant stands convicted and thereafter has a prior conviction." As stated by the Court of Appeal, defendant's guilty plea constituted a prior conviction "for purposes of the three strikes law, [and] nothing in the subsequent history of the case in Arizona may now be interposed to require a contrary conclusion."

---

[13] "[U]nder [the Arizona Rules of Criminal Procedure, rules] 17.1(e) and 27.8(e), a defendant in a noncapital case who pleads guilty or admits a parole violation waives the right to a direct appeal. In accord with art[icle] 2, [section] 24, however, those rules specifically allow the defendant to 'seek review . . . by filing a petition for post-conviction relief pursuant to Rule 32.' " (*State v. Sheldon* (1995) 181 Ariz. 256 [889 P.2d 614, 616].)

### III. Disposition

No matter what leniency Arizona may or may not bestow upon its recidivist criminals who have committed domestic violence felonies, once we are satisfied that a defendant's factual guilt was established in the foreign state, and once we are satisfied that such conviction constitutes a strike under our three strikes law, that prior crime will count here. The judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.