Filed 8/26/15

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| CHARLES M. CROFOOT,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>KAMALA D. HARRIS, as Attorney<br>General, etc.,<br><br>    Defendants and Respondents. | 2d Civil No. B258365<br>(Super. Ct. No. 56-2013-00432867-<br>CU-MC-VTA)<br>(Ventura County) |

A sex offender registration statute in the State of Washington ("Washington") allows for termination of registration after 10 years. A similar sex registration statute in the State of California requires lifetime registration. A Washington post-judgment order released defendant, who was a resident of Washington, from registration after 10 years. He is now a resident of California. Here we hold, among other things, that the full faith and credit clause does not require California to recognize the Washington post-judgment order.

Charles M. Crofoot appeals a judgment denying his petition for writ of mandate against respondents Kamala D. Harris, Attorney General of the State of

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].

California, and the Department of Justice. Crofoot alleges he is not subject to sex offender registration in California. (Pen. Code, §§ 290, subd. (c), 290.005.)[1]

We conclude, among other things, that 1) Crofoot is required to register as a sex offender in California based upon his Washington conviction of communicating with a child for "immoral purposes of a sexual nature" (Rev. Code Wash., § 9.68A.090); 2) the full faith and credit clause does not require California to terminate this state's lifetime registration requirement for Crofoot; and 3) Crofoot's equal protection claim was forfeited for this appeal and is not ripe. We affirm.

## FACTS

Crofoot pled guilty to the offense of communication with a minor for immoral purposes in Washington in 2000. (Rev. Code Wash., § 9.68A.090.) He was placed on probation. Later, he moved to California. California law requires him to register as a sex offender as a result of his Washington conviction. (§§ 290, subd. (c), 290.005.)

Crofoot filed a petition for writ of mandate against the State of California, the Department of Justice, and the State Attorney General. [[He claimed he was not subject to sex offender registration in California, because his out-of-state "gross misdemeanor" offense "is not an offense for which mandatory lifetime registration as a sex offender is required" under California law. (§ 290, subd. (c).)]]

The trial court denied his petition. It found: 1) Crofoot admitted that he communicated with a minor "via the internet, [and] the language and content of the exchange [were] sexually explicit in nature"; 2) this is "abnormal and unnatural" "sexual misconduct" with a child; 3) Crofoot's conduct in committing the Washington offense "would have resulted in his conviction of Penal Code section 647.6" (annoying or molesting a child) had this offense occurred in California; and, 4) consequently, Crofoot must register as a sex offender.

---

[1] All statutory references are to the Penal Code unless stated otherwise.

DISCUSSION

[[*Sex Offender Registration*

Crofoot contends his Washington conviction does not make him subject to sex offender registration in California. He claims the record shows the trial court erred because his offense does not contain all of the elements of a registerable offense in California.

*Inadequate Record*

Our review is hampered because Crofoot has not produced a complete record. In his petition for writ of mandate, he claimed the Attorney General improperly required him to register as a sex offender. He alleged that the findings made by the Washington court at "the time of sentencing" were not sufficient to meet the requirements of an offense that make him subject to registration as a sex offender in California. He claimed he did not make any "admissions" in the Washington case that would support the elements of a California sexual offense. In their answer to that petition, respondents denied those allegations.

Consequently, the petition's allegations involved contested factual issues that required Crofoot to present evidence. (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1155 ["the petitioner bears the burden of proving the truth of those allegations"].) Crofoot attached some documents from his Washington criminal case as exhibits to his petition. But he did not include the complete record of that case. He omitted key documents, such as the charging document (the information), and documents describing the facts of his crime. He attached a document to his petition entitled "Statement of Defendant on Plea of Guilty" to support the allegations of one paragraph of his petition. But respondents denied the allegations of that paragraph thereby placing them at issue. The Washington court held a hearing before it entered judgment. But Crofoot did not attach a copy of the reporter's transcript of that hearing or of any transcript of the Washington proceedings.

3

On appeal, Crofoot also does not produce a reporter's transcript of the mandamus hearing in the trial court or a settled statement. Because he had to prove his case at the mandamus hearing, the absence of a record precludes review of his claim that the court erred in its findings on the evidence. We may not presume error on an incomplete record. (*Null v. City of Los Angeles* (1988) 206 Cal.App.3d 1528, 1532.) "'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent . . . .'" (*Ibid.*)

### *The Merits*

But even on the present record, Crofoot has not shown error.

California requires a defendant convicted of a crime in another state to register as a sex offender if the crime would have been a sexual offense had it been committed in this state. (§ 290.005; see also §§ 290, subd. (c), 647.6.) The trial court found Crofoot's Washington offense constitutes the California crime of annoying or molesting a child under section 647.6. Section 647.6, subdivision (a)(2) makes it a criminal offense to annoy or molest a child "motivated by an unnatural or abnormal sexual interest in children." There are four elements to establish this offense: 1) "The defendant engaged in conduct directed at a child; [¶] 2. A normal person, without hesitation, would have been disturbed, irritated, offended, or injured by the defendant's conduct; [¶] 3. The defendant's conduct was motivated by an unnatural or abnormal sexual interest in the child; [¶] AND [¶] 4. The child was under the age of 18 years at the time of the conduct." (CALCRIM No. 1122.) "[T]o determine whether the defendant's conduct would unhesitatingly irritate or disturb a normal person, we employ an *objective* test not dependent on whether the child was in fact irritated or disturbed." (*People v. Lopez* (1998) 19 Cal.4th 282, 290.)

In 2000, Crofoot pled guilty to communicating with a minor for "immoral purposes of a sexual nature." (Rev. Code Wash., § 9.68A.090.) Under Washington law,

4

the offense of communicating with a minor for immoral purposes "refers to sexual misconduct."  (*State v. Falco* (Wash. Ct.App. 1990) 796 P.2d 796, 798.)

The Washington records contain an affidavit of a sheriff's deputy entitled "Certificate of Probable Cause."  In that document, Crofoot's conduct is described as follows:  Crofoot initiated a "computer chat session" with a 10-year-old girl.  During a chat session, he sent the child "a photo which depicts a white male holding his erect penis with one hand."

In his guilty plea agreement, Crofoot admitted that he communicated with a minor on the Internet and the "language and content of the exchange [were] *sexually explicit* in nature."  (Italics added.)  One of his probation conditions provided, "Because this crime involved *a sex offense* . . . (. . . where the victim is a minor . . .), you are *required to register* with the sheriff of the county of the State of Washington where you reside."  (Italics added.)

Crofoot suggests his conduct falls outside the California statute's definition of abnormal sexual interest.  But his photo was directed at a 10-year-old girl.  He admitted the "language and content of the exchange" were "sexually explicit in nature." "[T]here can be no *normal* sexual interest in any child . . . ."  (*People v. Shaw* (2009) 177 Cal.App.4th 92, 103; see also *People v. Kennedy* (2011) 194 Cal.App.4th 1484, 1487-1490.)

### Washington Certificate of Probable Cause

Crofoot contends the trial court could not consider the certificate of probable cause contained in his Washington case which describes the photo he sent to the child.  That probable cause statement was attached as an exhibit to respondents' opposition to Crofoot's petition for writ of mandate.  The Attorney General said it was part of "the record of the Washington proceedings."

Crofoot did not file a replication or other pleading to challenge the facts in the probable cause statement.  (*Elliott v. Contractors' State License Bd.* (1990) 224 Cal.App.3d 1048, 1054.)  He mentioned the documents respondents attached in his "reply

5

to opposition to petition for writ of mandate." But he did not request the trial court to strike them or object to their admission. He therefore forfeited this issue on appeal. (*Ibid*.; see also *People v. Burgener* (2003) 29 Cal.4th 833, 861, fn. 3.)

But even on the merits, the result is the same. "[T]he trier of fact may consider the entire record of the proceedings leading to imposition of judgment on the prior conviction to determine whether the offense of which the defendant was previously convicted involved conduct which satisfies all of the elements of the comparable California [statute]." (*People v. Myers* (1993) 5 Cal.4th 1193, 1195; see also *People v. Bacon* (2010) 50 Cal.4th 1082, 1118 [court may consider "the circumstances of the crime in the record beyond the mere facts contained in the indictment"].) Crofoot suggests the certificate of probable cause is simply an inadmissible police report. But respondents note that it is an official document that was "required" by state law to be filed in Crofoot's Washington criminal case. They represented to the trial court that the certificate of probable cause is an "attachment" to the information. Given the incomplete record, Crofoot has not shown why the trial court could not reasonably infer: 1) it was part of the accusatory pleading, and 2) consequently, his guilty plea was an admission of the offense described in the certificate of probable cause. He has not shown that he ever challenged or disagreed with the facts in that probable cause statement in the Washington case.

Crofoot cites *In re Rodden* (2010) 186 Cal.App.4th 24, 36, where the court held that section 290.005 requires that "the least adjudicated elements of the out-of-state crime for which the conviction was secured must meet the definition of a section 290 offense *without resort to an examination of the facts underlying the conviction*." (Italics added.) But in 2011, the Legislature amended section 290.005 to nullify this part of the *Rodden* decision. (§ 290.005, subd. (a); Stats. 2011, ch. 362, § 2.) Section 290.005 now provides that the trial court in reviewing the out-of-state conviction may consider "the elements of the convicted offense or facts admitted by the person or found true by the trier of fact . . . ." (§ 290.005, subd. (a).)

6

Crofoot contends applying this new version of section 290.005 allowed the trial court to examine facts about his conviction that could not have been considered at the time he committed his offense. He argues ordering sex offender registration based on that new provision is punishment violating the "constitutional prohibition on ex-post facto laws." But, "[t]he sex offender registration requirement imposed by section 290 does not constitute punishment for purposes of ex post facto analysis." (*People v. Castellanos* (1999) 21 Cal.4th 785, 796.)

Crofoot argues the trial court improperly relied on the probable cause statement. But he may not claim such error because he did not produce a reporter's transcript. (*Null v. City of Los Angeles*, *supra*, 206 Cal.App.3d at p. 1532.) He has not shown he ever requested findings by the court on the evidence it considered. Moreover, Crofoot *admitted* the "language and content of the exchange" with the child were "sexually explicit in nature." He has not shown the trial court erred by finding he was subject to sex offender registration in California. (*People v. Blocker* (2010) 190 Cal.App.4th 438, 440.)]]

### *Full Faith and Credit*

### *Conflicting Statutes*

Crofoot notes that in September 2014, a Washington state court issued an order terminating his Washington sex offender registration requirement. The court ruled that his registration requirement was properly terminated after 10 years consistent with Washington law. (Rev. Code Wash., § 9A.44.140.) Crofoot claims California's lifetime sex offender registration requirement for him must also terminate now. He argues California's failure to act consistently with Washington violates the full faith and credit clause of the United States Constitution. (U.S. Const., art. IV, § 1.) We disagree.

"[T]he full faith and credit clause does not require one state to substitute for its own statute, *applicable to persons and events within it*, the conflicting statute of another state, even though that [latter] statute is of controlling force in the courts of the state of its enactment with respect to the same persons and events." (*Pacific E. Ins. Co. v.*

*Industrial Acci. Com.* (1939) 306 U.S. 493, 502, italics added.) The full faith and credit clause may not be applied to frustrate a state's "*domestic policy*, in terms declared to be exclusive in its application to persons and events within the state." (*Id.* at p. 503, italics added.)

California law requires convicted sex offenders "to register for the rest of their lives *while residing in California*." (*People v. Kennedy*, *supra*, 194 Cal.App.4th at p. 1490, italics added; § 290.) Washington has a different policy and law. While they reside in California, convicted sex offenders who committed their offenses in California or other states are subject to this state's sex offender registration laws. Those laws are part of California's "domestic policy": "[M]andating lifetime registration of those who prey on underage victims serves 'to notify members of the public of the existence and location of sex offenders so they can take protective measures.'" (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 877.) Consequently, the registration law is intended to protect California residents. (*Ibid.*) "Section 290 'is intended to promote the "'state interest in controlling crime and preventing recidivism in sex offenders.'"'" (*Ibid.*)

Crofoot resides in California. His registration is a matter for this state's law enforcement, not Washington's. The California Legislature has determined his conviction makes him a potential threat to California children. (*Johnson v. Department of Justice*, *supra*, 60 Cal.4th at p. 877.) Washington has no legitimate "domestic" interest in "project[ing] its laws across state lines" to subject California children to the reduced protection Washington provides for its citizens. (*People v. Shear* (1999) 71 Cal.App.4th 278, 288.) Such a result would be an intrusion of a foreign policy "'obnoxious to the public policy of the forum.'" (*Ibid.*) "California's 'significant contact' with defendant, a California resident, creates a '"state interest[], such that choice of its law is neither arbitrary nor fundamentally unfair."'" (*Ibid.*) Applying the California registration requirement does not interfere with Washington's interests under the full faith and credit clause. (*Ibid.*; see also *Pacific Employers Ins. Co. v. Industrial Accident Commission of California*, *supra*, 306 U.S. at pp. 502-503.)

8

*Washington Court Judgment*

Irrespective of California policy, Crofoot contends that in his case requiring his registration violates full faith and credit to a Washington court judgment. We disagree.

In *Rosin v. Monken* (7th Cir. 2010) 599 F.3d 574, a defendant who committed a sex offense in New York claimed he was not subject to Illinois's sex offender registration law. Defendant argued that the New York court had ordered that he was not required to register as a sex offender, and, consequently, it would violate full faith and credit for Illinois to apply its registration law to him. The Seventh Circuit disagreed. "Illinois need not dispense with its preferred mechanism for protecting its citizenry by virtue merely of a foreign judgment that envisioned less restrictive requirements[] being imposed on the relevant sex offender." (*Id.* at p. 577.) "[T]he New York court in the present case 'cannot command obedience elsewhere on a matter the [New York] court lacks authority to resolve.'" (*Ibid.*) "*New York has no authority to dictate to Illinois the manner in which it can best protect its citizenry from those convicted of sex offenses.*" (*Ibid.*, italics added.)

In *Donlan v. State* (Nev. 2011) 249 P.3d 1231, defendant, who committed a sex offense in California, was in much the same position as Crofoot, vis-à-vis a registration statute in Nevada. Defendant claimed Nevada violated the full faith and credit clause by requiring him to register as a sex offender. He had pled guilty to lewd conduct with a child in California. Subsequently, "the California Attorney General[] terminated Donlan's requirement to register in California as a sex offender." (*Id.* at p. 1232.) The Nevada Supreme Court rejected his full faith and credit claim. It said, "California 'lacks power to dictate the means by which [Nevada] can protect its public.'" (*Id.* at p. 1233.) Consequently, Nevada properly imposed its sex offender registration law on defendant when he moved to that state, "[e]ven if California imposes less restrictive requirements upon sex offenders." (*Ibid.*)

Moreover, applying California's lifetime registration requirement while Crofoot resides in this state does not interfere with the Washington court's authority. The Washington court imposed a registration requirement to mandate registration "with *the sheriff of the county of the State of Washington*" where Crofoot had resided. (Italics added.) It did not extend its orders beyond its jurisdiction. Washington's interest in Crofoot is attenuated by his move to California in 2001.

If a convicted sex offender from another state moves to Washington, the length of his or her sex offender registration requirement is determined by Washington law, not the law of the state where the conviction occurred. California also applies that procedure by using its own law on the registration requirement for offenders convicted in other states who live here. In this regard, both states' application of their sex offender registration laws to out-of-state offenders is in harmony by preserving their domestic interests in regulating these individuals who live in their jurisdictions. Crofoot has not shown a violation of the full faith and credit clause.

[[*Equal Protection*

Crofoot contends he is denied equal protection of the laws. He claims California offenders who violate section 647.6 may obtain relief from sex offender registration by expunging the conviction (§ 1203.4) and seeking a certificate of rehabilitation. (§§ 290.007, 4852.01, subd. (c).) He contends he cannot obtain this relief because his conviction occurred in Washington.

Respondents contend this issue is forfeited because Crofoot is asserting it for the first time on appeal. They are correct. Crofoot's petition for writ of mandate did not raise this issue. (*People v. Burgener*, *supra*, 29 Cal.4th at p. 861, fn. 3 ["Because he failed to object on this basis below, the claim is waived"].)

Respondents also contend this issue is not ripe because: 1) facts must be established before the merits may be decided, 2) Crofoot made no showing that he attempted to obtain the type of relief he alleges others are entitled to, and 3) the

10

procedure to challenge the validity of the registration requirement requires that he file a type of writ of mandate which Crofoot has not yet filed.

"[T]he ripeness doctrine is primarily bottomed on the recognition that judicial decisionmaking is best conducted in the context of an actual set of facts so that the issues will be framed with sufficient definiteness . . . ." (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170.) The doctrine is intended to prevent courts from speculating about future events and the possible discretionary decisions of lower tribunals. (*Id.* at p. 172.) The goal is avoiding "premature adjudication." (*Id.* at p. 171.) Issues are not ripe where constitutional claims are asserted with an inadequate factual record (*In re E.J.* (2010) 47 Cal.4th 1258, 1281) or where a party has not exhausted available remedies before filing the appeal (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 292).

Individuals subject to the lifetime registration requirement may petition to have their convictions expunged. (§§ 1203.4, 4852.01, subd. (c).) If successful, they may then file a petition for a "certificate of rehabilitation and pardon." (§ 4852.01, subd. (c).) But relief is not a matter of right. It is a discretionary determination based on *proof* of rehabilitation factors. (*People v. Zaidi* (2007) 147 Cal.App.4th 1470, 1486, fn. 5.) Crofoot did not present such evidence.

Crofoot claims he is precluded from applying for that relief. But he has made no factual showing that he cannot expunge his Washington conviction. (See, e.g., *Firearm Rights of Nelson* (Wash. Ct.App. 2003) 85 P.3d 912, 916 [Washington has procedures for "a pardon, annulment, certificate of rehabilitation, or other equivalent procedures based on a finding of the rehabilitation"].)

The statute authorizing the filing of a petition for a certificate of rehabilitation (§ 4852.01, subd. (c)) refers to the California expungement statute (§ 1203.4) as a first step. But it does not expressly exclude defendants with expunged out-of-state convictions from seeking or attempting to obtain a certificate of rehabilitation. (Cf. *Newland v. Board of Governors* (1977) 19 Cal.3d 705, 713.) The

11

parties disagree about who may use this statute. But a statute that may be interpreted in multiple ways will not be declared unconstitutional if it can be applied so to avoid an unconstitutional result. (*People v. Davis* (1968) 68 Cal.2d 481, 483-484.) Those who challenge the statute must present evidence to show how it adversely impacts their rights. (*In re E.J.*, *supra*, 47 Cal.4th at p. 1281.)

Respondents claim: 1) Crofoot could have expunged his Washington conviction or proved he obtained a reasonable equivalent to section 1203.4 relief; 2) Crofoot could have presented evidence of his rehabilitation and sought a certificate of rehabilitation; and 3) if he was prevented from seeking that relief, Crofoot could have alternatively raised an equal protection claim. But Crofoot did not make a request for a certificate of rehabilitation in his mandamus action below or assert a constitutional claim based on disparate treatment involving section 4852.01.

Crofoot's certificate of rehabilitation and equal protection issues must initially be raised in the superior court. (*Lewis v. Superior Court* (2008) 169 Cal.App.4th 70, 77; see also *People v. Picklesimer* (2010) 48 Cal.4th 330, 340 [a trial court in a mandate proceeding may resolve any issue involving whether a person should be removed from "the state sex offender registry"].) "The granting or denial of a petition for a rehabilitation certificate lies within the trial court's sound discretion." (*People v. Zaidi, supra*, 147 Cal.App.4th at p. 1486, fn. 5.) Granting such a petition "would release" the defendant from the obligation to register. (*People v. Blocker*, *supra*, 190 Cal.App.4th at p. 445; § 290.5; *People v. Wingo* (1975) 14 Cal.3d 169, 183 [constitutional challenge to a sentencing statute on appeal was not ripe until after a ruling by a lower tribunal].) Consequently, Crofoot's claims are not ripe until after he files a petition for writ of mandate to *terminate* his registration requirement with evidence of his rehabilitation. (*Wingo*, at p. 183; *People v. Superior Court (Gary)* (2000) 85 Cal.App.4th 207, 219 ["the superior court must have the first crack at whether it can and should proceed"].)

Citing *Newland v. Board of Governors*, *supra*, 19 Cal.3d 705, Crofoot notes the California Supreme Court held a statute that prevented misdemeanor defendants from

12

obtaining certificates of rehabilitation violated equal protection. But the constitutional issue in that case was ripe. The statute on its face expressly excluded those defendants from seeking certificates. The defendant in that case exhausted his administrative remedies and filed a mandamus petition. The superior court ruled on the merits of the constitutional issue. The Supreme Court had a factual record.

Here there is no factual record to support an equal protection challenge. (*In re E.J.*, *supra*, 47 Cal.4th at p. 1281.) "'An as applied challenge . . . *contemplates analysis of the facts of a particular case or cases* to determine the circumstances in which the statute . . . has been applied and to consider whether *in those particular circumstances* the application deprived the individual to whom it was applied of a protected right." (*In re Taylor* (2015) 60 Cal.4th 1019, 1039.) Here "the particular factual context has yet to be fully developed." (*Stonehouse Homes, LLC v. City of Sierra Madre* (2008) 167 Cal.App.4th 531, 542.) We cannot speculate about the results of procedures that Crofoot has not utilized. This claim is not ripe.]]

We have reviewed Crofoot's remaining contentions and we conclude he has not shown grounds for reversal.

The judgment is affirmed.

<u>CERTIFIED FOR PARTIAL PUBLICATION.</u>


         GILBERT, P. J.

We concur:



   YEGAN, J.



   PERREN, J.


13

Tari L. Cody, Judge

Superior Court County of Ventura

_____

Stephane Quinn for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Susan Sullivan Pithey, Supervising Deputy Attorney General, Esther P. Kim, Deputy Attorney General, for Defendants and Respondents.