Filed 8/21/17

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B271770 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA435175) |
| v. | |
| ASTATI HALIM et al., | |
| Defendants and Appellants. | |

APPEAL from judgments of the Superior Court of Los Angeles County, Douglas Sortino, Judge. Affirmed.

Steve Cooley and Associates, Steve Cooley and Brentford J. Ferreira, for Defendants and Appellants.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

Following a joint human trafficking investigation by the Federal Bureau of Investigation (FBI) and the Los Angeles Police Department (LAPD), the United States Attorney's Office for the Central District of California (USAO) charged defendants Astati Halim and Hendra Anwar with harboring illegal aliens (8 U.S.C. § 1324(a)(1)(A)(iii)). Pursuant to plea agreements with the USAO, Halim pleaded guilty to misuse of visas (18 U.S.C. § 1546(a)) and Anwar pleaded guilty to minimum wage violations (29 U.S.C. §§ 206(f), 215). The Los Angeles County district attorney (District Attorney)[1] subsequently prosecuted defendants for violating California's anti-trafficking statute (Pen. Code, § 236.1).[2] After the trial court denied defendants' motion to dismiss the grand jury indictment, Halim pleaded guilty to one count of human trafficking (§ 236.1) and Anwar pleaded guilty to being an accessory after the fact (§ 32).

On appeal, defendants contend the trial court erred in denying their motion to dismiss. Defendants principally argue they were entitled to Fifth Amendment double jeopardy protection, which they contend barred the subsequent state prosecution notwithstanding the doctrine of dual sovereignty. We conclude this double jeopardy defense is unavailable because the federal crimes to which defendants pleaded guilty do not constitute the "same offense" as the subsequent state human trafficking charges. Defendants also contend the state

---

[1] References to the District Attorney are to the Los Angeles County Office of the District Attorney and its deputies assigned in the state trial of this case.

[2] All further statutory references are to the Penal Code unless otherwise specified.

2

prosecution was vindictive and violated their due process rights. But these claims are unsound and not supported by any relevant authority. We also reject defendants' related constitutional and statutory claims. The judgments are affirmed.

## FACTUAL AND PROCEDURAL SUMMARY

On September 9, 2013, the USAO filed a criminal complaint alleging defendants Halim and Anwar harbored illegal aliens in violation of title 8 United States Code section 1324(a)(1)(A)(iii). FBI Special Agent David Lam wrote a supporting affidavit, which was attached to and incorporated as part of the complaint. The following facts and allegations are taken from Special Agent Lam's affidavit, an LAPD investigative report, and the trafficking victims' testimony at the subsequent Los Angeles County Grand Jury proceedings.

Halim is an Indonesian citizen who has had lawful permanent resident status in the United States for 40 years. Her husband, Anwar, also is an Indonesian citizen. He worked in Hong Kong and resided part-time with his family at their home in Los Angeles. Defendants also owned another home in Los Angeles, where Halim's father resided, as well as a rental property in Beverly Hills. Defendants employed several domestic workers from Indonesia at these properties, including the three female human trafficking victims in this case.[3]

In February 2013, the Coalition Against Slavery and

---

[3] The record includes the full name of only one victim: Siti Chomsiyatun. One of the other victims was referred to by her first name, Partinah. The others went by the names Mualimah or Alin. For the sake of clarity and convenience, we refer to these individuals as Siti, Partinah, and Mualimah.

Trafficking (CAST) contacted the FBI and reported that Siti was a victim of human trafficking. During interviews with FBI and LAPD investigators, Siti stated she had been recruited by Halim's sister in Indonesia to work for defendants. Halim's nephew helped procure a visa for Siti, and instructed her to misrepresent their relationship and the purpose of her travel to the United States. Siti believed she had a two-year contract and would be paid $250 each month plus a $50 monthly stipend during the first year. Two days before she departed to the United States, she was presented with a five-year contract and felt obligated to sign it.

When Siti arrived in Los Angeles in January 2011, she surrendered her passport to Halim's nephew and began working at defendants' homes with several other domestic workers. She cleaned, cooked, and performed yard work approximately 16 hours per day, seven days a week, without taking time off. After two years working for defendants, Siti informed Halim that she wanted to return to Indonesia, but Halim told her that she was still under contract and could not leave. In December 2012, when defendants were away on vacation, Siti left defendants' home without her passport, eventually sought help from CAST, and agreed to cooperate with the FBI. Siti placed several pretext calls to Halim asking for her passport, but Halim denied having it.

On September 11, 2013, FBI agents searched one of defendants' homes and found two other Indonesian domestic workers hiding on the roof. These two, Partinah and Mualimah, like Siti had been recruited in Indonesia by associates of Halim, signed five-year employment contracts offering $250 per month plus a $50 stipend, travelled to the United States using

4

fraudulently obtained visas, and surrendered their passports to Halim upon arrival.  They also worked long hours cleaning, cooking, and performing yard work and manual labor at defendants' homes.  Defendants retained counsel and entered into plea negotiations with the USAO.

In December 2013, Halim pleaded guilty to misuse of visas in violation of title 8 United States Code section 1546(a).  Anwar pleaded guilty to minimum wage violations under the Fair Labor Standards Act (29 U.S.C. §§ 206(f), 215).  The first paragraph of Halim's plea agreement stated:  "This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities."  In February 2014, Halim was sentenced to five years probation, 400 hours of community service, and was ordered to pay restitution in the amount of $137,669 and a $50,000 fine.  Anwar was sentenced to two years probation, 100 hours of community service, and was ordered to pay a $10,000 fine.

In May 2014, the District Attorney filed a criminal complaint against defendants alleging three counts of human trafficking (§ 236.1).  A grand jury eventually was convened in March 2015.[4]  After hearing the testimony of Siti, Partinah, and Mualimah, the grand jury returned an indictment charging defendants with three counts of human trafficking (§ 236.1) and

_____

[4]     Defendants indicate in their opening brief that they filed demurrers to the complaint alleging a violation of California's statutory double jeopardy protections (§§ 656, 793) and inadequate notice as to the conduct underlying the charges.  The demurrers were overruled, but no preliminary hearing was held, and instead the District Attorney obtained the superseding grand jury indictment.

one count of conspiracy to commit human trafficking (§ 182, subd. (a)(1)). The indictment was later amended to charge Anwar with being an accessory after the fact (§ 32). Defendants pleaded not guilty to all charges.

In March 2016, defendants filed a motion to dismiss the indictment on several grounds, alleging that FBI Special Agent Lam was "dissatisfied" with the USAO's prosecutorial decisions and "elicited the assistance of the LAPD to convince" the District Attorney to bring human trafficking charges. Defendants requested an evidentiary hearing and argued that (1) the "sham separate sovereign" exception to the dual sovereignty doctrine applies; (2) the case should be dismissed as a vindictive prosecution; (3) the District Attorney failed to consider the charges' immigration consequences under section 1016.3; (4) the federal plea agreements must be given Fifth Amendment and due process protections notwithstanding the dual sovereignty doctrine; and (5) the court should dismiss the indictment on its own motion pursuant to section 1385.

Defendants attached several affidavits and documents to their motion to dismiss, including declarations from defense counsel and Meghan Blanco, then Assistant United States Attorney in charge of the federal case. Defense counsel stated that in their negotiations with Blanco, they expressed interest in negotiating a "global resolution" that would take into account exculpatory and mitigating evidence and avoid collateral immigration consequences. In her declaration, Blanco stated the USAO concluded that it could not prove human trafficking charges beyond a reasonable doubt and that the charges to which defendants pleaded guilty were appropriate in light of evidence beneficial to the defense.

Blanco also stated that she understood "the case agent was unhappy with the result" of the plea negotiations, but she did not expect the matter would be taken to the District Attorney after the federal plea disposition and sentencing. An investigative report by that office attached to defendants' motion indicated that the case began as a joint investigation, with the FBI as the lead investigative agency. It added that "[b]oth suspects are in the process of plea agreements and the LAPD has been asked to present this case to [the District Attorney]."

Gary S. Lincenberg, counsel for Anwar, said he participated in numerous conversations with USAO officials, who "advised that the FBI and LAPD case agents had objected to the settlement but that the [USAO] disagreed . . . and approved of the settlement over their objections." The officials also reportedly "expressed their understanding that the plea agreement was intended to resolve . . . all contemplated charges" and advised Lincenberg that "they expressed this view to their counterparts" at the District Attorney's office. In a transcript of a voicemail message, Assistant United States Attorney Lawrence Middleton told Lincenberg that officials at the District Attorney's office "fully understand that we would prefer that they not go forward, but it's equally clear that it's their decision, we are not going to, nor can we tell them what to do."

The trial court conducted a hearing on the motion to dismiss. Although the court made no factual findings and denied defendants' request for an evidentiary hearing, the prosecutor stipulated that Special Agent Lam was "unhappy" with the way in which the USAO resolved the federal case and encouraged police officers to present the case to the District Attorney. The court considered and rejected defendants' claims and denied the

7

motion to dismiss, finding that the dual sovereignty doctrine applied and therefore the subsequent state prosecution was not barred by the Fifth Amendment's protection against double jeopardy.

Defendants subsequently entered into plea agreements with the District Attorney. Halim pleaded guilty to one count of human trafficking (§ 236.1) and Anwar pleaded guilty to being an accessory after the fact (§ 32). The remaining counts were dismissed. The court suspended imposition of sentence as to both defendants and placed them on formal probation for three years. Defendants also were ordered to pay various fines and fees. This appeal followed.

## DISCUSSION

### I

"The Double Jeopardy Clause of the Fifth Amendment prohibits more than one prosecution for the 'same offence.' But under what is known as the dual-sovereignty doctrine, a single act gives rise to distinct offenses—and thus may subject a person to successive prosecutions—if it violates the laws of separate sovereigns." (*Puerto Rico v. Sanchez Valle* (2016) 579 U.S. ___ [136 S.Ct. 1863, 1867].) The Supreme Court promulgated the doctrine in *United States v. Lanza* (1922) 260 U.S. 377, 382, which held that a prior state conviction, followed by a federal indictment for the same acts, did not violate the Fifth Amendment protection against double jeopardy. Over vigorous dissents, this rule was affirmed in *Abbate v. United States* (1959) 359 U.S. 187 and its companion case, *Bartkus v. Illinois* (1959) 359 U.S. 121 (*Bartkus*), the latter upholding a state conviction after the defendant's acquittal in federal court for the same

offense. Although the subject of sustained criticism by courts and commentators, the dual-sovereignty doctrine has been reaffirmed and continues in force. (See *Puerto Rico v. Sanchez Valle*, at p. 1877 (conc. opn. of Ginsburg, J).)

The core claim of defendants' appeal challenges this long prevailing doctrine. They contend the Fifth Amendment double jeopardy guarantee "applies to plea bargains such that a separate sovereign may not prosecute based on the same conduct under the dual sovereign[ty] doctrine where the neighboring sovereign has entered into a global resolution of the case" through a plea agreement. Defendants maintain this result is proper in light of *Lafler v. Cooper* (2012) 566 U.S. 156 (*Lafler*) and *Missouri v. Frye* (2012) 566 U.S. 124 (*Frye*), two cases that clarified the scope of the Sixth Amendment right to effective assistance of counsel during plea bargaining. They cite a dissent by Justice Scalia in *Lafler, supra,* at pages 175 to 177, in which he cautioned that the decision "opens a whole new field of constitutionalized criminal procedure: plea-bargaining law." (*Id.* at p. 175.) Defendants rely on this statement for the proposition that plea bargains should be exempted from the dual-sovereignty rule.

In the alternative, defendants seek a novel application of the "sham separate sovereign" exception to the dual-sovereignty rule. This exception is implied from dicta in *Bartkus, supra,* 359 U.S. at pages 123 to 124, in which the court noted the record in that case did not support a claim the state was merely "a tool" of the federal government nor that "the state prosecution was a sham and a cover for a federal prosecution" designed to thwart the defendant's double jeopardy protections.[5] Defendants argue

---

[5] "Although the 'sham separate sovereign' exception has been recognized by some courts (see, e.g., *United States v. Figueroa-*

9

the District Attorney was "used as a tool" to vindicate FBI Special Agent Lam's "displeasure with the federal plea bargain."  They contend the state prosecution was a "sham" because the District Attorney pursued the case knowing the human trafficking convictions would have adverse immigration consequences.

We are skeptical of defendants' arguments, but conclude their efforts to avoid the dual-sovereignty rule put the cart before the horse.  Defendants have not made the threshold showing that they are entitled to Fifth Amendment double jeopardy protection.  Specifically, they have not established that the federal crimes to which they pleaded guilty constitute the "same offense" as the state charges under the governing "same-elements test," which is based on a statutory comparison of the crimes.  (*United States v. Dixon* (1993) 509 U.S. 688 (*Dixon*.)[6]  "The same-elements test,

---

*Soto* (9th Cir.1991) 938 F.2d 1015, 1018-1019), it is quite restricted.  For example, in *Figueroa-Soto*, the court refused to accept the argument even though the state had prosecuted at the request of federal authorities and the same prosecutor had conducted both the state and federal prosecutions.  (*Id.* at pp. 1018-1020.)" (*People v. Westbrook* (1996) 43 Cal.App.4th 220, 225.)  Indeed, "the exception has been termed 'illusory' as a court is extremely unlikely to find that this situation existed."  (6 LaFave et al., Criminal Procedure (4th ed. 2015) § 25.5(a), pp. 852-853, fns. omitted.)

[6]     Because this issue was not raised below nor briefed by the parties, we requested supplemental briefing.  Defendants argue it is a "false premise" to suggest their entitlement to Fifth Amendment double jeopardy protection is a threshold issue.  They also imply the inquiry should focus on the underlying criminal conduct, not the elements of the offenses.  We disagree.  The application of the dual-sovereignty rule is irrelevant unless defendants have federal double jeopardy protection; and the

10

sometimes referred to as the '*Blockburger*' test, inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution."[7] (*Id.* at p. 696.)

In applying this test, we must first determine the offenses to which jeopardy attached. Generally, a person is in legal jeopardy for an offense when placed on trial on a valid accusatory pleading before a competent court. (*People v. Bryant* (1992) 10 Cal.App.4th 1584, 1596.) But in cases that do not go to trial, "[o]rdinarily, jeopardy attaches when a defendant enters a plea of guilty, or when the court imposes sentence following the entry of that plea. [Citations.]" (*People v. Massie* (1998) 19 Cal.4th 550, 563; see also *Ricketts v. Adamson* (1987) 483 U.S. 1, 8 [assuming jeopardy attached at least when sentence was imposed on guilty plea].) Here, jeopardy attached when Halim and Anwar were convicted and sentenced in federal court following their respective guilty pleas to misuse of visas (18 U.S.C. § 1546(a)) and minimum wage violations (29 U.S.C. §§ 206(f), 215). Defendants were not placed in jeopardy for the original federal charge of harboring illegal aliens because they were never placed on trial nor pleaded guilty to that offense.

Under the governing *Blockburger* test, neither misuse of visas (18 U.S.C. § 1546(a)) nor minimum wage violations (29

---

applicable test is clearly established. Although the Supreme Court had adopted a conduct-based approach in *Grady v. Corbin* (1990) 495 U.S. 508, that decision was overruled three years later in *Dixon*, *supra*, 509 U.S. at page 704.

[7]     From *Blockburger v. United States* (1932) 284 U.S. 299.

11

U.S.C. §§ 206(f), 215) constitutes the "same offense" as human trafficking under California law (§ 236.1). These crimes involve entirely different elements.

On the federal side, title 18 United States Code section 1546(a) provides, in pertinent part, that "[w]hoever, knowingly forges, counterfeits, alters, or falsely makes any immigrant or nonimmigrant visa . . . or utters, uses, attempts to use, possesses, obtains, accepts, or receives any such visa" is guilty of visa fraud. "The elements of visa fraud under 18 U.S.C. § 1546(a) are '(1) the defendant made a false statement, (2) the statement was made knowingly and (3) under oath, (4) the statement concerns a "material fact," (5) and the statement was made in an application required by the United States immigration laws and regulations.'" (*United States v. Ongaga* (5th Cir. 2016) 820 F.3d 152, 164, fn. omitted.)

With respect to minimum wage violations, title 29 United States Code section 206(f) provides, in pertinent part, that certain "[e]mployees in domestic service" "shall be paid" a specified minimum hourly wage. Section 215(a)(2) further provides that it shall be unlawful for any person "to violate any of the provisions of section [20]6 or section [20]7" of this title. And section 216(a) provides: "Any person who willfully violates any of the provisions of section [215 of this title] shall upon conviction" be subject to specified criminal sanctions. Thus, the elements of a minimum wage violation are: (1) the employee was employed by defendant; (2) defendant did not pay the employee wages at the federally mandated rates; and (3) defendant's violation was willful. (See 29 U.S.C. §§ 206(f), 215(a)(2), 216(a).)

The California human trafficking statute provides, in pertinent part, that "[a] person who deprives or violates the

12

personal liberty of another with the intent to obtain forced labor or services, is guilty of human trafficking." (§ 236.1, subd. (a).) As summarized in the official standard jury instructions for criminal cases, the elements of this offense are (1) the defendant either deprived another person of personal liberty or violated that other person's personal liberty; and (2) when the defendant did so, he or she intended to obtain forced labor or services from that person. (CALCRIM No. 1243.) As the phrase is used in the definition of this crime, unlawful "'[d]eprivation or violation of the personal liberty of another' includes substantial and sustained restriction of another's liberty accomplished through force, fear, fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury to the victim or to another person under circumstances where the person receiving or apprehending the threat reasonably believes that it is likely that the person making the threat would carry it out." (§ 236.1, subd. (h)(3).)

The elements of section 236.1, "depriv[ing] or violat[ing] the personal liberty of another with the intent to obtain forced labor or services," are not contained in either federal crime. And both federal crimes include elements not contained in section 236.1. Neither making a false statement (18 U.S.C. § 1546(a)) nor failure to pay minimum wage (29 U.S.C. §§ 206(f), 215)) is an element of section 236.1. These federal crimes do not constitute the "same offense" as human trafficking charges under the *Blockburger* test, and consequently defendants are not entitled to Fifth Amendment double jeopardy protection.[8] (See *Dixon*, *supra*,

---

[8]	The application of California's statutory double jeopardy protections (§§ 656, 793) was litigated at the demurrer stage, but the claim was not raised in defendants' motion to dismiss. On appeal, defendants merely note that "sections 656 and 793 do not

509 U.S. at p. 696.) All of defendants' contentions regarding the dual-sovereignty doctrine and the "sham separate sovereign" exception are moot in light of this conclusion.[9]

## II

In addition to their double jeopardy and dual-sovereignty claims, defendants make several related constitutional and statutory arguments. They contend the state human trafficking charges constituted a vindictive prosecution and violated their due process rights. They also argue the District Attorney failed to properly consider the immigration consequences of the human trafficking convictions under section 1016.3.

"[T]he due process clauses of the federal and state Constitutions (U.S. Const., 5th & 14th Amends.; Cal. Const., art. I, §§ 7, 15) forbid the prosecution from taking certain actions against a criminal defendant, such as increasing the charges, in retaliation for the defendant's exercise of constitutional rights." (*People v. Jurado* (2006) 38 Cal.4th 72, 98 (*Jurado*).) A presumption of vindictiveness applies in the posttrial context, where, for example, a prosecutor increases the charges after the defendant has exercised his or her appellate rights. (See

_____

preclude dismissal of this case." To the extent defendants seek to pursue this statutory claim on appeal, we deem the issue waived because it was not raised below and defendants fail to provide legal argument and citation to authority. (See *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 ["[i]ssues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived"].)

[9] We also need not address defendants' argument that the case should be remanded for an evidentiary hearing to determine whether the "sham separate sovereign" exception applies.

*Blackledge v. Perry* (1974) 417 U.S. 21, 28-29.) However, "[i]n the pretrial setting, there is no presumption of vindictiveness . . . . Rather, the defendant must 'prove objectively that the prosecutor's charging decision was motivated by a desire to punish him for doing something the law plainly allowed him to do.'" (*Jurado*, at p. 98, quoting *United States v. Goodwin* (1982) 457 U.S. 368, 384.)

Defendants contend a presumption of vindictiveness arose when the District Attorney brought the state charges "after the defendants exercised their right to accept a federal plea bargain which *Frye* and *Lafler* have raised to a constitutional right of due process." We find no support for this assertion. First, defendants cannot rely on a presumption of vindictiveness because the District Attorney's actions occurred exclusively in the pretrial setting. (See *Jurado*, *supra*, 38 Cal.4th at p. 98.) Defendants' reliance on *Lafler* and *Frye* also is misplaced; those cases did not establish a due process right to accept a federal plea bargain. To the contrary, the Supreme Court in *Frye* specifically noted that "a defendant has no right to be offered a plea" by the prosecution, "nor a federal right that the judge accept it." (*Frye, supra*, 566 U.S. at pp. 148-149; see also *People v. Smith* (1971) 22 Cal.App.3d 25, 30-31 [courts have discretion to reject a proffered plea bargain under § 1192.5].) Defendants have not established that the prosecutorial decisions of the District Attorney were motivated by a desire to punish defendants for exercising any recognized constitutional or statutory right.

Nor are we persuaded that the doctrine of vindictive prosecution applies where, as here, independent decisions are

15

made by separate federal and state prosecutors.[10] *United States v. Ng* (2d Cir. 1983) 699 F.2d 63 (*Ng*) is instructive. In that case, following a state prosecution in which the defendant pleaded guilty, the federal government elected to bring more serious charges because it was dissatisfied with the state's plea bargain. (*Id.* at pp. 65-66.) The Second Circuit upheld the federal prosecution, reasoning "the fact that the prosecutions of the defendants are by two different sovereigns, each acting independently under its own laws and in its own interest without any control of or by the other, renders inapplicable the concept of prosecutorial vindictiveness." (*Id.* at p. 68.) The court found no evidence that the state prosecutor "acted as a tool of the federal government," nor that the federal prosecution was based on "hostility or a punitive animus" towards the defendant. Rather, the additional charges were based on the federal government's interest in ensuring that a sufficient jail term was imposed. (*Id.* at pp. 68-69.)

Defendants rely on a rare case finding prosecutorial vindictiveness in the context of separate federal and state prosecutions. In that case, *United States v. Belcher* (W.D. Va. 1991) 762 F.Supp. 666 (*Belcher*), the prosecutor was both the Commonwealth's Attorney for Wise County, Virginia and a

---

[10] Indeed, when separate state and federal prosecutions are involved, federal courts of appeal consistently have rejected claims of vindictive prosecution. (See, e.g., *United States v. Graham* (8th Cir. 2003) 323 F.3d 603, 606-609; *United States v. Spears* (7th Cir. 1998) 159 F.3d 1081, 1086-1087; *United States v. Stokes* (1st Cir. 1997) 124 F.3d 39, 45-46; *United States v. Johnson* (5th Cir.1996) 91 F.3d 695, 698-999; *United States v. Boone* (11th Cir.1992) 959 F.2d 1550, 1554; *United States v. Raymer* (10th Cir. 1991) 941 F.2d 1031, 1042.)

16

Special Assistant United States Attorney for the Western District of Virginia. (*Id.* at p. 668.) After the defendant had successfully appealed his state conviction for a single count of manufacturing marijuana, he was indicted by a federal grand jury for conspiracy, manufacturing marijuana, and using a firearm in relation to a drug-trafficking crime. (*Id.* at p. 669.) The district court held that the federal indictment was presumptively vindictive. (*Ibid.*)

*Belcher* is factually and legally inapposite. We are not presented with a case of cross-designated prosecutors. The record also does not show that the District Attorney was operating as a "tool" of the USAO or even that the two offices were cooperating on the case. (See *Ng, supra*, 699 F.2d at pp. 68-69.) To the contrary, the District Attorney decided to prosecute defendants for human trafficking despite the USAO's request that the charges not go forward. And as previously explained, defendants cannot rely on a presumption of vindictiveness and have not identified any established constitutional or statutory right as to which they were punished for exercising. (See *Jurado, supra*, 38 Cal.4th at p. 98.) Consequently, defendants are unable to state a claim for prosecutorial vindictiveness.

In tandem with their due process vindictiveness claim, defendants appear to make a distinct argument sounding in substantive due process. They argue the District Attorney's decision to bring human trafficking charges was "arbitrary and capricious" because it was not in furtherance of a "legitimate state purpose." According to defendants, their federal plea agreements were structured to avoid collateral immigration consequences, and trial counsel explained to the prosecutor that any human trafficking conviction would subject defendants to "mandatory deportation and/or exclusion from the United

17

States."[11] Because defendants' state pleas resulted in probation but no jail time, they contend the prosecutor's only interest was to obtain a "newsworthy" conviction and to "nullify the accommodation on immigration consequences offered by the USAO."

There is no support in the record for defendants' allegations that the District Attorney brought the human trafficking charges solely for publicity or to subject defendants to collateral immigration consequences. And we disagree with the assertion that the actions of that office were "arbitrary and capricious" or "irrational." The State of California has a legitimate interest in enforcing its criminal prohibition against human trafficking, including the protection of victims as well as deterring and punishing offenders. (See *Bartkus*, *supra*, 359 U.S. at p. 137 [states have a "historic right and obligation . . . to maintain peace and order within their confines"].) We accordingly decline to find any due process violation in this case.

Defendants also contend that the District Attorney failed to properly consider the immigration consequences of the state convictions under section 1016.3, which establishes specific duties for defense counsel and prosecutors. Subdivision (a) of section 1016.3 provides in relevant part that "[d]efense counsel shall provide accurate and affirmative advice about the immigration consequences of a proposed disposition." Subdivision (b) further provides: "The prosecution, in the interests of justice, and in furtherance of the findings and declarations of Section 1016.2, shall consider the avoidance of

---

[11]     Defendants provide no authority or analysis demonstrating that their convictions under section 236.1 will result in these immigration consequences.

18

adverse immigration consequences in the plea negotiation process as one factor in an effort to reach a just resolution."

Section 1016.2 notes that "[i]n *Padilla v. Kentucky* [(2010)] 559 U.S. 356 [(*Padilla*)], the United States Supreme Court held that the Sixth Amendment requires defense counsel to provide affirmative and competent advice to noncitizen defendants regarding the potential immigration consequences of their criminal cases.  California courts also have held that defense counsel must investigate and advise regarding the immigration consequences of the available dispositions, and should, when consistent with the goals of and informed consent of the defendant, and as consistent with professional standards, defend against adverse immigration consequences.  [Citation.]" (§ 1016.2, subd. (a).)

The section goes on to state that the Supreme Court in *Padilla* "sanctioned the consideration of immigration consequences by both parties in the plea negotiating process.  The court stated that 'informed consideration of possible deportation can only benefit both the State and noncitizen defendants during the plea-bargaining process.  By bringing deportation consequences into this process, the defense and prosecution may well be able to reach agreements that better satisfy the interests of both parties.'"  (§ 1016.2, subd. (b).)  The section concludes as follows:  "It is the intent of the Legislature to codify *Padilla* . . . and related California case law and to encourage the growth of such case law in furtherance of justice and the findings and declarations of this section."  (§ 1016.2, subd. (h), italics added.)

Defendants argue the District Attorney's "decision to ignore the immigration consequences . . . in furtherance of no true state

19

purpose was arbitrary, capricious and irrational." They contend that because the USAO had "essentially followed the same guidelines" as those enunciated in section 1016.3 and had agreed to a plea avoiding collateral immigration consequences, it was "irrational, arbitrary, and capricious for [the District Attorney] to insist on a felony conviction for human trafficking" resulting in defendants' deportation. These contentions are speculative and do not provide a basis to overturn the judgments.

Section 1016.3, subdivision (b) only requires prosecutors to "consider the avoidance of adverse immigration consequences in the plea negotiation process as one factor in an effort to reach a just resolution." Based on defendants' own allegations, the prosecutor and defense counsel discussed immigration consequences during plea negotiations. And if defendants are correct that any conviction under section 236.1 would result in mandatory deportation and exclusion, it is not apparent that the prosecutor and defense counsel could have negotiated a plea agreement to avoid this consequence. In effect, defendants are attacking the indictment, not the prosecutor's conduct during plea negotiations. Nothing in section 1016.3 permits them to do so. We find no basis to conclude the District Attorney failed to comply with its obligations under section 1016.3

### III

Defendants also argue "full faith and credit" must be given to plea bargains following *Lafler, supra,* 566 U.S. 156, and *Frye, supra,* 566 U.S. 124. They contend that because plea agreements are a judicially-approved form of contract, and state courts must give full faith and credit to federal orders and judgments, it follows that the dual-sovereignty doctrine "can no longer be allowed to render these contracts and judgments illusory." This

argument is unsupported by law and provides no grounds for relief.

Article IV, section 1 of the United States Constitution provides that full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state.  At least in the civil context, "[f]ull faith and credit must be given to a final order or judgment of a federal court.  [Citations.]" (*Levy v. Cohen* (1977) 19 Cal.3d 165, 172-173).  But it is far from clear that the clause even applies in the criminal context.  (See *Nelson v. George* (1970) 399 U.S. 224, 229 ["Full Faith and Credit Clause does not require that sister States enforce a foreign penal judgment"]; see also *People v. Laino* (2004) 32 Cal.4th 878, 890 ["the full faith and credit clause, even if it does apply to criminal judgments, does not prevent a state from (1) enhancing a sentence based on an out-of-state conviction for which the defendant has been pardoned; and (2) determining under its own laws whether a guilty plea in another jurisdiction constitutes a prior conviction"].)

To the extent the Full Faith and Credit Clause applies to criminal judgments, courts in other jurisdictions have rejected arguments similar to the one made by defendants here.  In *Gillis v. State* (1993) 633 A.2d 888, 892-893, a Maryland court of appeal held that the Full Faith and Credit Clause could not be used to deny another state its sovereign power to enforce its own criminal law.  And in *Turley v. Wyrick* (8th Cir. 1977) 554 F.2d 840, 842, the Eighth Circuit held that a defendant's prosecution by a state following his acquittal in federal court for the same offense did not deny full faith and credit to the decision of the federal court.

Even were we to assume, for sake of argument, that the trial court was bound to give full faith and credit to the federal

21

judgment and plea agreements, defendants would not be entitled to relief. Defendants' federal pleas to misuse of visas and minimum wage violations were not determinative of whether they violated California's human trafficking laws. (See *Turley v. Wyrick, supra*, 554 F.2d at p. 842.) Moreover, defendants' plea agreements were, by their own terms, "limited to the USAO" and could not "bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities." Nothing in the federal plea agreements or judgment barred the District Attorney from prosecuting defendants under state law or required the trial court to dismiss the indictment.

## IV

Finally, defendants claim the trial court abused its discretion by refusing to dismiss the case under section 1385. We disagree. Section 1385, subdivision (a) provides that a "judge . . . may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." Under section 1385 a "defendant has no right to make a motion, and the trial court has no obligation to make a ruling," however defendant "does have the right to 'invite the court to exercise its power by an application to strike a count or allegation of an accusatory pleading . . . .' [Citation.]" (*People v. Carmony* (2004) 33 Cal.4th 367, 375.)

"'Dismissals under section 1385 may be proper before, during and after trial.' [Citation.] Because the concept of 'furtherance of justice' (§ 1385) is amorphous, we have enunciated some general principles to guide trial courts when deciding whether to dismiss under section 1385. Courts must consider 'the constitutional rights of the defendant, and the interests of

22

society represented by the People,' and '[a]t the very least, the reason for dismissal must be "that which would motivate a reasonable judge."'" (*People v. Hatch* (2000) 22 Cal.4th 260, 268.) We review a trial court's refusal to dismiss for abuse of discretion. (*People v. Carmony*, *supra*, 33 Cal.4th at p. 374.)

"'A determination whether to dismiss in the interests of justice after a verdict involves a balancing of many factors, including the weighing of the evidence indicative of guilt or innocence, the nature of the crime involved, the fact that the defendant has or has not been incarcerated in prison awaiting trial and the length of such incarceration . . . . When the balance falls clearly in favor of the defendant, a trial court not only may but should exercise the powers granted to him by the Legislature and grant a dismissal in the interests of justice.' [Citations.]" (*People v. Verducci* (2016) 243 Cal.App.4th 952, 962-963.)

Here, the trial court determined this case did not warrant a section 1385 dismissal. The court found no evidence to suggest that the District Attorney's prosecution of defendants was inappropriate. There was substantial evidence presented to the grand jury showing defendants deprived the victims of their personal liberty with the intent to obtain forced labor or services from them. (See § 236.1.) There is also nothing in the record to support defendants' allegations that the prosecutorial decisions were motivated by an improper purpose. Consequently, defendants have not demonstrated that the trial court's decision was "so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.) We find no abuse of discretion in the trial court's determination that this case did not warrant a section 1385 dismissal.

## DISPOSITION

The judgments are affirmed.

## CERTIFIED FOR PUBLICATION.

                                        EPSTEIN, P. J.

We concur:


MANELLA, J.


COLLINS, J.