Filed 5/13/25  P. v. Elliott CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAMES THERON ELLIOTT,<br><br>    Defendant and Appellant. | H051762<br>(Santa Clara County<br>Super. Ct. No. 60517) |

Defendant James Theron Elliott was convicted by jury in 1976 of one count of conspiracy to commit murder, robbery, grand theft and insurance fraud; one count of murder in the first degree; and one count of robbery in the first degree.  The jury ultimately found true the special circumstance of "murder for hire"—that the murder was intentional and carried out by the actual killer pursuant to an agreement with defendant for valuable consideration.  Defendant petitioned for resentencing on the murder and conspiracy convictions under Penal Code section 1172.6 (formerly Pen. Code, § 1170.95; unspecified statutory references are to this Code).  The trial court denied the petition without an evidentiary hearing, finding defendant ineligible for resentencing as a matter of law because the jury's true findings that he hired the actual killer and conspired to commit murder each independently established that the killing was intentional and thus malice had not been imputed to defendant.  The trial court also ruled that a conviction for conspiracy to commit murder is not subject to resentencing under section 1172.6.  For the reasons explained here, we will affirm.

# I.   BACKGROUND

We base our factual summary on the opinion affirming defendant's convictions, *People v. Elliott* (1978) 77 Cal.App.3d 673 (*Elliott*).[1]  Defendant paid Charles Thomas to kill a jewelry dealer, Ben Rudman, so that defendant could take Rudman's jewelry inventory.  One of defendant's other associates, Daniel Thompson, arranged to meet with Rudman under the pretense that he wanted to buy a ring.  Defendant also went to the jewelry store and was there with Rudman and Thompson when the store closed at 9:30 p.m.  Afterward, Rudman and three other men attempted to order dinner at a restaurant frequented by Rudman, but left after the restaurant owner told them the kitchen was closed.  The restaurant owner—who was the last person to see Rudman alive— testified that one of Rudman's companions resembled defendant.  Rudman's body was discovered a few days later in his car's trunk.  He had been shot three times.  A bullet recovered from his body and another bullet recovered from the car door were determined to have been fired from a gun that Charles Thomas's wife had purchased at defendant's behest and which defendant had test-fired in the Thomases' backyard.  (*Id*. at pp. 680– 682, 684, 686.)

According to Thomas's wife, when Thomas returned home after killing Rudman, he was wearing different clothes than when he left home (although he had not packed any luggage) and his shirt had blood on it.  Thomas gave his wife a diamond ring and told her that he had shot Rudman three or four times while sitting in Rudman's car.  (*Elliott*, *supra*, 77 Cal.App.3d 673 at p. 681.)  Defendant later gave her Rudman's briefcase, which contained jewelry belonging to Rudman, and told her to burn it.  About a week after Rudman's killing, defendant gave Thomas a stolen car and instructed him to drive it to Mexico, obtain forged ownership papers and return it to defendant, who would then sell it and give Thomas $1,000 from the sale.  (*Ibid*.)

---

[1]  We grant the Attorney General's request for augmentation of the record under California rules of Court, rule 8.155.

## A. CHARGES, INSTRUCTIONS AND VERDICTS

Defendant was charged by information with three counts. Count one charged defendant, Thomas and Thompson with violating Penal Code sections 187, 211 and 484 and Insurance Code section 556 in a single conspiracy. (*Elliott*, *supra*, 77 Cal.App.3d at p. 682.) Evidence of several other incidents was admitted at trial, including two other murder-for-hire plots in which defendant intended to collect insurance money on the victims, a fake robbery of $360,000 worth of jewels in order to collect the insurance, and a claim by defendant that his car and other jewelry were stolen to collect the insurance. (*Id*. at p. 684.) The Court of Appeal determined in defendant's direct appeal that these incidents were "a series of different, separate conspiracies" that should not have been consolidated into one count, but that the error did not call for reversal "in the light of the much more grievous evidence of murder by contract which involved [defendant] personally, and which was clearly proven at the trial." (*Id*. at p. 685.)

Count two charged Thomas as the actual killer and with use of a firearm during the murder, alleged Rudman was murdered pursuant to Thomas's agreement to accept payment from defendant, and that Thomas killed Rudman deliberately and with premeditation and in the course of a robbery. (*Elliott*, *supra*, 77 Cal.App.3d at p. 677.)

Count three charged the three defendants with robbing Rudman of jewelry and personal property. (*Elliott*, *supra*, 77 Cal.App.3d at p. 677.)

As relevant here, the jury was instructed on conspiracy (including withdrawal from conspiracy and coconspirator joint responsibility for natural and probable consequences of the conspiracy's objective); on first degree murder (including express and implied malice); on first degree felony murder in the pursuit of a conspiracy; and on second degree murder.

The jury found defendant guilty on all counts. (*Elliott*, *supra*, 77 Cal.App.3d at p. 677.) Regarding conspiracy (count one), the jury was required to find defendant was guilty of conspiring to commit each separate target offense.

3

After the jury found defendant guilty of first degree murder, the trial court instructed the jury with CALJIC No. 8.81 (1973 Rev.) on the murder for hire special circumstance. The jury found true that Rudman's murder was "intentional and committed pursuant to an agreement to receive valuable consideration from" defendant." (*Elliott*, *supra*, 77 Cal.App.3d at p. 678.)

Defendant was sentenced to death on count two and to consecutive prison sentences on counts one and three. (*Elliott*, *supra*, 77 Cal.App.3d at p. 678.) The death sentence was automatically appealed to the California Supreme Court, which found California's then-existing capital punishment scheme unconstitutional. (*Rockwell v. Superior Court* (1976) 18 Cal.3d 420.) The Supreme Court transferred defendant's matter to the Court of Appeal, which modified the sentence to "life imprisonment for the murder of Rudman, and to imprisonment for the term prescribed by law for the conspiracy count and the robbery count, the latter two sentences merging with and running concurrently with the life term pursuant to Penal Code section 669." (*Elliott*, at p. 689.)

## B. SECTION 1172.6 PETITION

Defendant petitioned for resentencing under section 1172.6 in 2023. Using a preprinted form, he checked boxes to indicate he met the statutory conditions for relief found in subdivisions (a)(1)–(a)(3) and to request court-appointed counsel. Defendant argued his conviction for conspiracy to commit murder does not necessarily mean the jury convicted him of premeditated and deliberate murder because it "could have reached its verdict if it believed that [he] did not intend to kill (harbor malice) at the time of the killing but made an ineffective withdrawal from the conspiracy. For the same reason, the special circumstance true finding does not mean the jury found that [he] possessed the intent to kill at the time of the killing." Defendant elaborated on his theory that the jury's true finding on the murder for hire special circumstance did not preclude resentencing because "the true finding only means that the jury agreed that the murder was intentional

4

and carried out pursuant to an agreement. […] [¶] The special circumstance instructions do not include a time element and the jury was not instructed about withdrawal from the agreement. Thus, [defendant] could have been found guilty because he initially had the intent to kill and entered into an agreement with the actual killer, but then changed his mind and did not or could not stop the killing. Thus he could have been found guilty of first degree felony murder and the special circumstance could be found true without him having the intent to kill or implied malice at the time of the killing."

The People opposed defendant's petition on the grounds that his conspiracy conviction was not eligible for resentencing and that the jury's true finding on the murder for hire special circumstance and defendant's conviction for conspiracy to commit murder each established that the killing was intentional and that no malice was imputed to him.

### C. ORDER DENYING RELIEF

After the appointment of counsel and briefing, the trial court denied defendant's petition at the prima facie stage. The court ruled that defendant's conspiracy conviction is not subject to resentencing because Senate Bill Nos. 1437 and 775 do not apply to conspiracy to murder convictions. As the trial court stated in its written order: "conspiracy is a specific intent crime requiring both an intent to agree to conspire and further intent to commit the target crime or object of the conspiracy[;] In the case of conspiracy to commit murder, a finding of malice is required[; and thus] there is no need to impermissibly 'impute' malice under pre-Senate Bill No. 1437 standards; the target crime is murder and not some other crime from which a killing resulted."

Regarding defendant's murder conviction, the court ruled that "a petitioner convicted of conspiracy to commit murder is ineligible for section 1172.6 resentencing on his accompanying murder conviction because the conspiracy conviction establishes, as a matter of law, that (s)he was not convicted of murder under a natural and probable consequences theory or other theory in which malice was merely imputed." The trial

5

court also reasoned that the jury's murder for hire true finding that defendant hired the actual killer "separately establishes that [defendant] intended to murder the victim."

## II.  DISCUSSION

### A. LEGAL PRINCIPLES

"Senate Bill [No.] 1437 'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § l, subd. (f) [(Senate Bill 1437)].)" (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*), superseded by statute on another ground.) This change in law resulted in three amendments to the Penal Code.  First, as amended by Senate Bill No. 1437, section 188, subdivision (a)(3) was added to require that "in order to be convicted of murder, a principal in a crime shall act with malice aforethought." (§ 188, subd. (a)(3).)  That subdivision further states, "Malice shall not be imputed to a person based solely on his or her participation in a crime." (*Ibid.*)  Second, Senate Bill No. 1437 added section 189, subdivision (e), limiting liability for felony murder. (Stats. 2018, ch. 1015, § 3.)  Third, Senate Bill 1437 "created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended." (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*).

The section 1172.6 resentencing process begins with a petition declaring that all requirements for eligibility are met. (*Ibid.*)  When the trial court receives a petition "containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' [Citation.]  If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition.  [Citation.]  If, instead, the defendant has made a prima facie showing of entitlement to relief, 'the court

6

shall issue an order to show cause.' " (*Strong*, *supra*, 13 Cal.5th at p. 708., citing *People v. Lewis* (2021) 11 Cal.5th 952, 970–972 (*Lewis*); § 1172.6, subd. (c).)

Section 1172.6, subdivision (a) sets forth three conditions the petitioner must show to establish eligibility for relief. As relevant here, defendant was required to show (1) that the information allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine, or other theory under which malice is imputed to a person based solely on that person's participation in a crime; (2) that he was convicted of murder following a trial; and (3) that he could not presently be convicted of murder or attempted murder because of changes to section 188 or 189 made effective January 1, 2019. (§ 1172.6, subds. (a)(1)–(a)(3).)

We independently review a trial court's determination on whether a prima facie showing has been made. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.) In making its determination, the court may rely on the record of conviction, including the jury instructions and verdict forms. (*Lewis*, *supra*, 11 Cal.5th at pp. 970–972.) But the prima facie inquiry is limited; the court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id*. at pp. 971–972.) In evaluating how a jury would interpret the court's instructions, the instructions must be considered as a whole, and the jury is presumed to have understood and followed the court's instructions. (*People v. Burton* (2018) 29 Cal.App.5th 917, 925; *People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

### B. DEFENDANT IS NOT ENTITLED TO RELIEF AS A MATTER OF LAW

Based on our independent review, we conclude defendant is not entitled to resentencing under section 1172.6. Defendant is required to show, among other things, that he was "convicted of felony murder or murder under the natural and probable consequences doctrine" (§ 1172.6, subd. (a)) and that he could no longer be convicted "because of" the 2019 statutory changes. (§ 1172.6, subd. (a)(3).) Defendant cannot satisfy those requirements because he was convicted of first degree murder under a

7

theory of direct aiding and abetting express malice murder that is unaffected by the 2019 changes to sections 188 and 189. (*Gentile*, *supra*, 10 Cal.5th at p. 848 ["Senate Bill [No.] 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought"]; *People v. Coley* (2022) 77 Cal.App.5th 539, 546 ["A theory of direct aiding and abetting remains a valid theory after Senate Bill No. 1437"].) Senate Bill No. 1437 did not change the law to benefit aiders and abettors whose actions show an intent to kill the victim (see *People v. Cooper* (2020) 54 Cal.App.5th 106, 112–113), much less to benefit defendants who hire someone else to kill the victim. (See *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1161–1162, 1166–1167 [no § 1172.6 resentencing on conviction of second degree murder as direct aider and abettor in murder for hire killing].)

The jury found defendant guilty of first degree murder and found true the murder for hire special circumstance alleging Rudman's murder was intentional and carried out pursuant to the actual killer's agreement with defendant. The jury therefore convicted defendant as a direct aider and abettor of intentional murder—a theory of murder liability that is still valid after Senate Bill No. 1437. "Under section 190.2, subdivision (a)(1), a defendant is subject to the [financial gain] special circumstance if the 'murder was intentional and carried out for financial gain.' Even if the defendant is 'not the actual killer,' if that defendant 'with the intent to kill, aids, abets, counsels, commands, induces, solicits, requests, or assists any actor in the commission of murder in the first degree,' he or she is also subject to this special circumstance. (§ 190.2, subd. (c).) 'Reading the two provisions together it is clear that one who intentionally aids or encourages a person in the deliberate killing of another for the killer's own financial gain is subject to the special circumstance punishment.' " (*People v. Fayed* (2020) 9 Cal.5th 147, 201–202.) When the jury found defendant guilty of first degree murder and found true the murder for hire special circumstance, it necessarily determined defendant acted with the intent to kill.

8

By the same token, a defendant convicted of conspiracy to commit murder and first degree murder of the same victim is ineligible for resentencing under section 1172.6. (*People v. Medrano* (2021) 68 Cal.App.5th 177, 179 (*Medrano*).)  As another panel of this court explained in *People v. Nguyen* (2024) 103 Cal.App.5th 668, 673, a conviction for conspiracy to commit first degree murder required the jury to find the defendant personally harbored express malice, rendering him ineligible for relief under section 1172.6.  (See also *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 866 (*Lovejoy*); *People v. Whitson* (2022) 79 Cal.App.5th 22, 32 (*Whitson*).)  "Conviction of conspiracy to commit first degree murder shows, as a matter of law, that the 'target offense' is murder, not some other lesser offense."  (*Medrano*, at p. 179.)

Defendant attempts to distinguish these cases on the ground that as in *Whitson*, his jury was instructed he could be convicted of murder and conspiracy to murder without the intent to kill if murder was the natural and probable consequence of robbery (or other theft-related crime).  Defendant argues the jury was not instructed that he could not be convicted of conspiracy to commit murder based on implied malice.  In ruling on the adequacy of a prima facie showing under section 1172.6 however, "the issue is not whether there was a theoretical error in the jury instructions", but rather whether it is possible the defendant was convicted of "murder based on a now-impermissible theory, i.e., the natural and probable consequences doctrine."  (*Lovejoy*, *supra*, 101 Cal.App.5th at p. 867.)  The "natural and probable consequences instruction as applied to a conspiracy [ ] is problematic in this context only where a defendant is convicted of murder or attempted murder based on a conspiracy to commit 'a lesser crime that resulted in murder.' "  (*Ibid.*)  Here, defendant was convicted of conspiracy to commit murder as well as first degree murder of the same victim.  Although defendant was also convicted of robbery and conspiracy to commit robbery (and theft and fraud), the jury found true that he conspired to commit murder, found him guilty of the first degree murder of the victim, and (if there were any doubt remaining) found true the

murder for hire special circumstance. "Although murder liability is divided into different degrees and can rest on different theories […], conspiracy to commit murder can only take a single form: It 'requires a finding of unlawful intent to kill, i.e., express malice' and 'is necessarily conspiracy to commit premeditated and deliberated first degree murder.' " (*People v. Ware* (2022) 14 Cal.5th 151, 167.)

By convicting defendant of conspiracy to commit murder, the jury necessarily found he harbored the intent to kill when he conspired to commit murder. (*Medrano*, *supra*, 68 Cal.App.5th at p. 182–183 [notwithstanding instructions on the natural and probable consequences doctrine, "*the target offense was* [necessarily] *first degree murder*" because defendant "was convicted of conspiracy to commit first degree murder. '[A] conviction of conspiracy to commit murder requires a finding of intent to kill.' "].) Accordingly, there is no possibility defendant " 'could not presently be convicted of murder … because of changes to Section 188 or 189 made effective January 1, 2019 [by Senate Bill 1437].' (§ 1172.6, subd. (a)(3).)" (*Lovejoy*, *supra*, 101 Cal.App.5th at p. 868.)

We also reject defendant's argument that he is entitled to resentencing because the instructions on murder for hire and for conspiracy did not require an intent to kill at the time of the murder, which he contends is an element implicit in both section 189, subdivision (e)(2) and section 20. Defendant cites *People v. Croy* (1985) 41 Cal.3d 1, 16–18 to assert that the murder for hire special circumstance finding does not render him ineligible for resentencing because the trial court did not instruct the jury (and therefore the jury did not find) that he must have had the intent to kill at the time of the murder. But with respect to aider and abettor liability, *Croy* does not "establish[] a timing principle requiring a separate finding that [the defendant] harbored an intent to kill at the time of the actual shooting." (*Lovejoy*, *supra*, 101 Cal.App.5th at p. 868.) Unlike the defendant in *Croy* who was prosecuted as the actual shooter, defendant was prosecuted here as a member of a preexisting conspiracy to commit murder. Accordingly,

10

defendant's "responsibility for a coconspirator's pursuit of that object continues until [he] affirmatively rejects or repudiates it and communicates that repudiation to [his] former cohorts." (*Lovejoy*, at p. 869; accord *People v. Battle* (2011) 198 Cal.App.4th 50, 66 [special circumstances statute, section 190.2, subd. (c), "requires that the aider and abettor intended to kill only at the time of the aiding and abetting, not at the time of the actual killing."].)

Defendant argues that the statutory language of section 189, subdivision (e)(2) and section 20 each contain an implicit timing principle. By raising it for the first time only in his reply brief, defendant has forfeited the argument. (*People v. Rangel* (2016) 62 Cal.4th 1192, 1218–1219 [defendant forfeits an argument not raised until the reply brief].) And other than merely quoting the statutes, defendant cites no legal authority or reasoned argument based on the statutes' text for his proposed interpretation. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1181–1182 [failure to support claim with adequate argument forfeits the claim as not adequately raised]; *People v. Halim* (2017) 14 Cal.App.5th 632, 644, fn.8 [" '[i]ssues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues' " forfeited].)

## C. CONSPIRACY TO COMMIT MURDER IS NOT ELIGIBLE FOR RESENTENCING UNDER SECTION 1172.6

Defendant argues he is eligible for resentencing on his conspiracy to commit murder conviction because he was not "truly convicted of conspiracy to commit murder", but rather convicted of conspiracy to commit four different crimes: murder, robbery, grand theft and insurance fraud. Defendant also argues that his conspiracy to commit murder conviction is eligible for section 1176.2 resentencing relief because, he asserts, the conspiracy instruction permitted the jury to convict on conspiracy to murder if it found he intended to commit an underlying crime where death was a natural and probable consequence. We reject both arguments.

11

The verdict form confirms that the jury specifically convicted defendant of conspiracy to commit four crimes, including murder. A conviction for conspiracy to commit murder is not eligible for resentencing according to the express terms of section 1172.6, which "provide the potential for resentencing relief only for persons convicted of murder, attempted murder, or manslaughter. Conspiracy to murder is not mentioned in the statute." (*Lovejoy*, *supra*, 101 Cal.App.5th at p. 870.) The "failure to include conspiracy to commit murder in the list of offenses eligible for resentencing relief is entirely consistent with the legislative purposes in enacting both Senate Bills 1437 and 775—'to ensure, with certain exceptions related to felony murder that "a conviction for murder requires that a person act with malice aforethought," and that "culpability for murder [is] premised upon that person's own actions and subjective mens rea." (Stats. 2018, ch. 1015, § 1, subd. (g).)' " (*Lovejoy*, at p. 870.) Because conspiracy to commit murder is based on the conspirator's own mental state, it requires that a defendant either act with malice or intend to kill. And because section 1172.6 does not offer relief for a person convicted of conspiracy to commit murder, any purported instructional error regarding that conviction which could have been asserted on direct appeal is irrelevant. (*People v. Burns* (2023) 95 Cal.App.5th 862, 868 [defendant's "failure to raise [instructional error] argument on direct appeal forfeited that claim … and the subsequent petition process created by the Legislature when it enacted Senate Bill No. 1437 did nothing to change the applicable law so as to resurrect an argument he had already abandoned."].)

### III. DISPOSITION

The order denying defendant's section 1172.6 petition is affirmed.

12

_____

Grover, J.

**WE CONCUR:**

_____

Greenwood, P. J.

_____

Wilson, J.

H051762
*The People v. Elliott*